Lansing, Ch. J.
This was a voyage undertaken expressly for the purpose of illicit trade in a foreign country. A policy on such a voyage against bur own laws would be. void, but we are not bound to declare it void when merely contravening the positive regulations of another state.(a) On account of the nature of the voyage, the insurance in point of time, was extended to 24 hours after the goods should be landed. ' A protection against the risk of seizure until they should be so landed, was a direct and important stipulation in the contract, and the. insurance being entire, we are of opinion that the risk continued on the entire goods until 24 hours after all of them were landed. This is the correct sense of the terms of the, policy, and it would be inconvenient to admit a different construction. The‘risk cannot reasonably be divided and applied to separate parcels. It would be difficult if not impossible,' under the usual circumstances of such a voyage, to descend to the minute details [*144] which would be Requisite, and to distinguish the precise time of landing each article.
*173 As to the second question, it is admitted that, by a computation, the accuracy of which is not denied, the value of the goods saved did not amount to half the value insured. The loss was therefore total, according to the rule which has been established where a moiety is lost.(a) The plaintiffs having abandoned, are therefore entitled to recover for a total loss.
*174 The last point respects the conduct of the consignee. After the abandonment he became the agent of the assurer,(b) and the disposition of the goods saved as made by him, while he acted bona fide, ought to be at the risk and for the benefit of the assurer. The loss on the sugar and rum,, in which the proceeds of the property saved were invested,.ought therefore, to be charged to the defendant. The plaintiffs, on the arrival of these articles, tendered to the defendant, the ram only, but it appears that the rum and sugar were part of a mixed cargo, which was the product of different funds, and difficult to be distinguished; that the sugar was not withheld from an improper motive, but omitted to be tendered through mistake, and that the assurer wholly declined having any thing to do with the shipment. Under such circumstances attending a commercial transaction, and considering that the defendant refused to accept any part of the shipment,
I think the strictness of a complete tender, may well be dispensed with, and that the plaintiff is entitled to judgment on the verdict generally.
The other judges concurred, except on the last point, as' to which they were of opinion that the defendant was entitled to a deduction for a proportional part of the rum and sugar, *175 by a calculation to be made on the product of the whole cargo.
Judgment for the plaintiffs accordingly.

 The question has. been much: discussed, whether a trade prohibited by one country, might be made the subject of lawful insurance, to be protected and enforced in the courts of an'olher, .in which the prohibition does not exist. Valin and Emerigoh consider the insurance of goods employed in a foreign, smuggling or contraband trade to be binding, provided the insurer was duly informed when he entered into the. contract of the nature of the trade, but Pothiér has questioned the good faith and valid obligation of 'such insurance . 3 Kent Comm. 262-267, and references. Thd*validity of such insurances however has been established beyond question in England and in this country. Planche v. Fletcher., Doug. 238. Levee v. Fletcher, cited Park on Ins. 313. Richardson v. Maine Ins. Co. § Mass. R. 102,112. Parker v. Jones, 13 id. 173. Andrews v. Essex Fire & Marine Ins. Co. 3 Mason, 18, 20.

 This rule was taken from the French law and is to be found in the treatise of Le Guidon, ch. 7, art. 1 and 9 ; where it is applicable to the case of goods, and in respect to both ship and cargo, the rule has been incorporated into the French, English and American jurisprudence. 3 Kent Comm. 318, 319,329. Phil, on Ins. 401. Valin Gomm. 2.101. Pothier des Ass. n. 121. Ludlow v. Columbian Ins. Co. 1 Johns. R. 335. Dickey v. New York Ins. Co. 4 Cowen, 222. Carter v. American Ins. Co. 7 Cowen, 564. S. C. in error, 4 Wend. 45. Wood v. Lincoln & Kennebeck Ins. Co. 6 Mass. R. 479, 482. Gordon v. Mass. Ins. Co. 2 Pick. 249, 261. Peele v. Suffolk Ins. Co. 7 Pick. 254. Hall v. Franklin Ins. Co. 9 Pick. 466. Bryant v. Commonwealth Ins. Co. 13 Pick. 543. Deblois v. Ocean Ins. Co. 16 Pick. 303. Orrok v. Commonwealth. Ins. Co. 21 Pick. 456. Hall v. Ocean Ins. Co. id. 472. Hart v. Delaware Ins. Co. 3 Wash. C. C. R. 340. Budd v. Union Ins. Co. 4 M’Cord, 1. S. P. Rose v. Same, id. Ritchie v. U. S. Ins. Co. 5 Serg. & Rawle, 501. Peters v. Phoenix Ins. Co. 3 id. 25. See Ritchie v. U. S. Ins. Co. infra. Thus, where a ship performed her voyage, but was so damaged as not to be worth repairing, yet as the damage was only estimated at 48 per cent, this was holden to be not a total loss, and that the insured could not abandon. Cazalet v. St. Barbe, 1 T, R. 187. And if a vessel cannot be repaired at her port of destination where the policy ends, it is not material, if the injury sustained during the voyage does not amount to 50 per cent. Ralston v. Union Ins. Co. 4 Binney, 386. Thus where a ship was insured from Philadelphia to Antwerp, and received great injury from striking upon a shoal before she arrived and delivered her cargo ; it was found impossible to repair her at Antwerp from want of docks, and being unseaworthy she was condemned and sold, having been previously surveyed and an estimate made of her necessary repairs. The captain purchased her for a less sum than the estimate of repairs, and for less than one-sixth of her value in the policy, and then sailed at a very considerable risk for London, where she was repaired at less than 50 per cent. After the repairs were made, but before the owner knew of them, or of her arrival at London, he abandoned. Held that the damage did not amount to 50 per cent of her value, and therefore the abandonment was not valid, but that the insurers were bound to pay not only the cost of repairs but the expenses of " taking her to London to be repaired. Id. It is worthy of observation, however that the ordinance of the marine of Louis XIV. h. t. art. 46, confines abandonment to cases where there is a “ Perte entiere des effets assures,” as in case of capture, shipwreck, stranding, arrest of princes, or entire loss. Valin construes these words to mean, “ Perte generique des effets assures sans étre *174 absolue.” Valin, 61. Pothier, however, interprets them as signifying “ Perle totale, ou presque totale des effets assures.” Pothier des Ass. 119. The case of Peele v. The Merchants Ins. Co. 3 Mason, 27, however, contains a very elaborate review of the whole law of abandonment, and the conclusion is, that the right of abandonment is to be judged by all the circumstances of each particular case, and that there was no general rule that the injury to the ship by the perils insured against, must in all cases exceed one-half her value to justify an abandonment.

 Chesapeake Ins. Co. v. Stark, 6 Cranch, 268. Lee v. Boardman, 3. Mass. R. 247. Columbian Ins. Co. v. Ashley, 4 Peters, 139. Center v. American Ins. Co. 7 Cowen, 564. Jumel v. The Marine Ins. Co. 7 Johns. R. 412. Garden v. The Columbian Ins. Co. id. 514. United Ins. Co. v. Robinson, 2 Caines’ R. 280. S. C. in error, 1 Johns. R. 592. Mitchell v. Eadie, 1 T. R. 608. Hudson v. Harrison, 3 Brod. & Bing. 106. Bryant v. The Commonwealth Ins. Co. 6 Pick. 131. In the case of Dederer v. The Delaware Ins. Co. 2 Wash. C. C. R. 61. Mr. Justice Washington, intimates that the underwriter is not bound by an unlawful act of the master, but that the effect thereof, must fall upon the insured. The general current of authorities however, is the other way.