MURRAY AND MURRAY *against* THE UNITED INSURANCE
COMPANY.

If a vessel be described in a policy of insurance as an American ship, it is a
warranty *that* she *is* American.

Where an American vessel was transferred to A. in trust to secure a debt due
to B. who was a British subject, it was held, that B. being the *cestuy que*
*trust* of the profits of the vessel, and a subject of one of the belligerents,
the vessel ceased to be American ; and the fact not being communicated to
the insurers, the policy was void ; and the insured entitled to a return of
premium only.

THIS was an action on a policy of insurance, on the
" American brig, called the Mary," from New York to a port
in Jamaica. The cause was tried, at the last March circuit
in New York, before Mr. Justice *Radcliff*, when the jury
found a special verdict. The material facts are the follow-
ing : John Bazing, a citizen of the United States, was sole
owner of the brig, which was duly registered as an Ameri-
can vessel. On the 28th April, 1798, Bazing conveyed the
brig, by a regular bill of sale, to John Murray, (one of the
plaintiffs,) and William Hart, both *citizens of the* United
States, who thereupon obtained an American register, in
their own names. The bill of sale, although absolute in
terms, was executed in trust, for the purposes set forth in an
agreement executed, the same day, between the parties ; and
which agreement stated that Nathaniel Bayley, by his agents,
Murray and Hart, had sued Bazing, who not being able to
find bail, had transferred the brig to Murray and Hart ; and
[*169]      Murray and Hart obligated themselves to reconvey
the brig to Bazing, in case he put in *good special
bail, in ten days, and if not, it was agreed, that the
brig should proceed on her voyage to Jamaica, in which
case the suit was to be discontinued, and Bazing to pay the
costs. If the brig proceeded on her voyage, it was agreed,
that Murray and Hart were to cause her to be insured, at the
expense of Bazing ; and the earning and freight were to be ·
applied to satisfy the debt due from Bazing to Bayley ; and

if the vessel should be lost, the sum insured was to be applied in like manner; and if the vessel returned, and the demand of Bayley was not satisfied, then Murray and Hart were to sell the vessel at auction, and apply the proceeds to satisfy the debt; and the overplus (if any) was to be returned to Bazing. It was further agreed, that Bazing might, if he preferred, employ the vessel for four months from that time, in the coasting trade, and enjoy the freight and earning, and pay the charges; if the debt was not satisfied in that time, then Murray and Hart were to sell the vessel, as above mentioned.

Bayley was a British subject residing in Jamaica. The policy was signed on the 15th of May, 1798. The plaintiffs did not disclose, or communicate the above agreement to the defendants; and it was admitted, that if they had disclosed it, there would have been no additional premium, under an idea, that the bill of sale did not vest any interest in Bayley. The brig, while on her voyage, was, on the 24th of May, 1798, captured by a French privateer, and carried into Cape François, and condemned, as good prize, on account of double and colored papers, proving the brig on the one hand to be the property of William Hart, and on the other, the property of John Bazing.

*B. Livingston* and *Burr*, for the plaintiffs.

*Hamilton, Harison* and *Troup*, for the defendants.

*RADCLIFF, J. This vessel was insured as the [*170] American brig Mary. This has already been considered as equivalent to a representation of neutral property. It is stronger than a representation, for being contained in the policy itself, it amounts to an implied warranty of that fact.(a) Considering it either as a representation, or an implied warranty,(b) the plaintiffs, according to the cases al-

(a) See *Goix* v. *Low, supra,* vol. 1, p. 341, and n. (a.)

(b) Mr. Marshall, (1 Marshall, 450,) defines a representation, as "a collateral statement, either by writing, not inserted in the policy, or by parol, of such facts or circumstances relative to the proposed adventure, as are necessary to be communicated to the underwriters, to enable them to form a just estimate of the risks." Mr. Duer, in commenting upon this definition, ob-

ready decided, are precluded from a recovery, by the opera-
tion of the sentence in the French court of prizes, which

serves, that it " has been generally followed, and in many judicial opinions,
its acuracy seems to be fully admitted.    It is, however, liable to many and
grave objections.
    " It is not essential to a representation that it should be made by parol, or
by a writing *not inserted* in the policy ; it may be contained in the policy it-
self.   It is true, that by the English law, and our own, every affirmation of a
fact contained in the policy, in whatever terms expressed, is construed as a
warranty ; [in the case of *De Hahn* v. *Hartley*, 1 T. R. 343, these words,
' sailed from Liverpool, with 14 six pounders, swivels, small arms, and fifty
hands or upwards, copper sheathed,' written in the margin of the policy, were
held to be a warranty.   In *Kenyon* v. *Berthon*, the following words were
written transversely in the margin of the policy : ' in port on the 20th of July,
1776.'   Lord Mansfield was clear that they were a warranty, and as the
vessel was proved to have sailed on the 18th of July, that the underwriter
was not liable, although the difference of two days was not material to the
risk.   Doug 12, No. 4.   See also *Bean* v. *Stupart*, Doug. 11.   If the vessel
is described in the policy as an American, British, Swedish ship, &c., it is a
warranty of national character.   *Goix* v. *Low*, 1 Johns. Cases, 341 ; *Murray*
v. *United Ins. Co.* 2 Johns. Cases, 168 ; *Barker* v. *Phœn. Ins. Co.* 8 Johns.
R. 237 ; *Francis* v. *Ocean Ins. Co.* 6 Cowen, 404 ;] but when the statement
relates, not to facts, but to the information, expectation or belief of the party,
it is plain that it cannot be thus construed, and it is equally clear that when
the parties declare that the statement, although positive in its terms, shall be
construed as a representation, and not as a warranty, the intention so declar-
ed, must supersede the general rule.   [*Hodgson* v. *Richardson*, 1 Black. 463.
*Reid* v. *Harvey*, 4 Dow. 97.   *Thomson* v. *Buchanan*, 4 Brown's P. C., Tom-
lyn's ed. 484.   *Stewart* v. *Morrison*, Millar on Ins. 54.   *Rice* v. *N. Eng. Ins.
Co.* 4 Pick. 414.   *Baxter* v. *N. Eng. Ins. Co.* 3 Mass. R. 96.   *Andrews* v.
*Essex Ins. Co.* 3 Mason, 61.   *Lothian* v. *Henderson*, 3 B. & P. 499.   1
Phillips, 269.   1 Marshall, 315.   1 Emerigon, 182.]   To illustrate this :
If it be stated in the policy that the vessel to which the insurance re-
lates, is provided with 10 guns and 20 men, this is a warranty ; and if she
have one gun, or one man less than the stipulated number, the policy is void ;
but if the statement be, that ' *according to the last advices*, the vessel will
be furnished with the same armament,' this is not a warranty of the fact, but
a mere assertion that such advices had been received, and if this assertion be
true, and the case is otherwise exempt from fraud, the policy is valid, even
when the information proves to be wholly erroneous.   If to the positive state-
ment, these or equivalent words are added, ' *It is, however, understood, that
this statement is not to be construed as a warranty, but as a representation
merely,*' its literal fulfilment is no longer requisite, and unless the variation
from its terms be such as plainly to enhance the risks, the insurer continues
liable."   2 Duer on Insurance, 644–646.

among other causes, proceeds on the ground that the property was English. But I also think the plaintiffs are precluded on the merits.

1. A representation or warranty of neutrality, requires the property to be *wholly* neutral. If one of the belligerents had an interest, whether partial or entire, the risk was thereby increased, and the warranty not complied with. In the present case, Bazing, the original owner, made a bill of sale on the 20th of April, to the plaintiffs, in trust for one Bayley, who was a British subject. The insurance was made on the 15th of May thereafter. By an article executed at the same time with the bill of sale, it was agreed to reconvey the brig to Bazing, within a limited time, if he should enter good bail in a suit then depending against him, in favor of Bayley ; or if the money due to Bayley should be paid, either by the earnings of the vessel or otherwise ; and it was particularly agreed, that the freight of the brig, on the voyage in question, should be applied to the debt due to Bayley ; and if the freight should prove insufficient, the vessel was to be sold for the payment of the debt, and the surplus money only returned to Bazing. By virtue of the bill of sale and this agreement, Bayley had an interest in the vessel, and in her freight; and he might finally sell and dispose of her as he saw fit, for the payment of his debt. Whether this interest was, according to the distinction of our law, a *legal* or *equitable* *interest is not material to the [*171] question. That distinction, I believe, is not known in any other country, except the one from which we derive our jurisprudence. It is peculiar to England and the United States. It is sufficient, therefore, that Bayley had a vested interest, which he might enforce in some of the courts of any country. His interest being such, and he being one of the belligerents, the property was not *wholly* neutral, and the implied warranty is, therefore, not supported.

2. It appears by the verdict that the circumstances relative to the interest of Bayley were not disclosed to the underwriters. If they were material to the risk, which I think they undoubtedly were, they ought to have been disclosed ;

and the defendants would then have had an opportunity to act as they saw fit.(*a*) It is true, that it is also found that the defendant afterwards admitted, that had they known the agreement, its contents would not have induced them to demand a higher premium, under an idea, that it did not vest any interest in Bayley. But if the light in which I have viewed it be just, this idea was incorrect, and founded in mistake, and, therefore, cannot affect the merits of the question.

Although the terms of the agreement were not fully known to the French admiralty ; yet it appeared by a letter from William Hart to Bayley, that the vessel was conveyed by a bill of sale in trust, as above mentioned, and that the court

(*a*) See note (*a*) to *Seton* v. *Low, supra*, vol. 1, p. 8 ; 1 Phillips on Ins. 213, *et seq.* In *McLanahan* v. *The Universal Ins. Co.* 1 Peters, 185, Mr. Justice Story observes : " The contract of insurance has been said to be a contract *uberrimæ fidei*, and the principles which govern it are those of an enlightened moral policy. The underwriter must be presumed to act upon a belief that the party procuring insurance, is not at the time in possession of any facts material to the risk, which he does not disclose." Mr. Duer in treating of concealment, (Duer on Ins. vol. 2, p. 380, § 2,) remarks that " Marine insurance is, emphatically, a contract—to borrow an expressive phrase from the Roman law—*uberrimæ fidei*, of the most abounding good faith. It abhors deceit, dissimulation, evasion. It condemns alike, the suppression of truth, and the assertion of falsehood. It seeks to place the parties, as far as practicable, on the ground of an entire equality, and, therefore, exacts from both a frank and unreserved candor, an open and lucid integrity. The general rules are, that each is bound to communicate to the other, all facts within his personal knowledge, that tend to show the true character and value of the risks that are meant to be covered, and that each, in his own communications to the other, is bound to state the exact and the whole truth, in relation to the facts that he represents, or upon inquiry, discloses. *Carter* v. *Boehm*, 3 Burr. 1905. *Seaman* v. *Fonereau*, 2 Strange, 1183. *Oliver* v. *Greene*, 3 Mass. R. 133. *Kohne* v. *N. A. Ins. Co.* 1 Wash. C. C. R. 156. *Vale* v. *Phœnix Ins. Co.* 1 Wash. C. C. R. 283. *M'Lanahan* v. *Univer. Ins. Co.* 1 Peters, 185. Park, 8th ed. 403. 3 Kent's Comm. 283. Grotius de Jur. Bell. Lib. 2, ch. 12, § 23. Bynkershoek Quæs. Jur. Pri. Lib. 4, ch. 25, § 6. Pardessus, tom. 3, p. 330. Boulay Paty, tom. 3, p. 500. 3 Benecke, ch. 10, p. 292. 1 Emerig. ch. 1, § 3, p. 18, 19. Pothier, n. 91." Consult also Duer on Ins. vol. 2, p. 503, 506, where the ordinances of Hamburgh, Stockholm, Rotterdam, Amsterdam, Bilboa, and Prussia, and other proofs and illustrations are collected.

went on this ground, among others, in condemning the vessel, and I think the evidence was sufficient to justify the sentence. For these reasons, I am of opinion, that the plaintiffs cannot recover ; that the policy was void *ab initio*, and the risk never commenced. But as no *actual fraud* has appeared, the plaintiffs are entitled to a return of the premium ; and for this they ought to have judgment. The right to a return of the premium has been already decided in this *court, under similar circumstances ; and the .[*172] reasons in support of that decision need not be repeated.

KENT, J. Two questions arise in this cause :

1. Was the vessel warranted American ? If so ;

2. Do not the condemnation at Cape François, and the fact that Bayley, the *cestuy que trust* of the profits of the vessel, was a British subject, furnish sufficient evidence of a breach of the warranty.

1. The first question has already been decided in this court, in the case of *Goix* v. *Low*, (1 Johns. Cas. 141.) It was there determined, that if a vessel be described as an American vessel, it amounts to a warranty that she is American.

2. As to the second question, it is sufficient to refer to the bill of sale and agreement, without taking notice of the sentence at Cape François, which is destitute of precision, and does not state with clearness the result of the deductions of the court. It appears that Murray and Hart took a bill of sale of the vessel, as trustees for Bayley, and that he was, in equity, the owner, or *cestuy que trust*, or entitled to the profits of the vessel during the voyage. This was sufficient under our own law to destroy her privilege as an American vessel. The act of Congress declares, that no vessel shall continue to enjoy such privilege any longer than she shall continue to be wholly owned by American citizens ; nor shall an American register be obtained, without affidavit, that no foreigner is either directly or indirectly, by way of trust, confidence, or otherwise, interested in the vessel, or in the profits and issues thereof. The section in this act, prescribing the form

of the oath, accordingly explains and illustrates the meaning of the other part, that the vessel must be wholly owned by American citizens. This brig, therefore, sailed without being entitled to an American register, within the true intent and meaning of the act; and one of the enemies of [*173] France, being a *cestuy que *trust of her profits, she was not, in reference to the powers at war, to be considered a neutral vessel entitled to the privileges of neutrality. It is easy to perceive, that if such arrangement was to be permitted, foreigners resident abroad could trade with all the immunities of Americans, contrary to the policy of our statute, and contrary to the right of maritime capture, as it respected the belligerent powers.

I am of opinion, therefore, that the interest of Bayley in the profits of the vessel, is evidence of a breach of the warranty, the same not being wholly true; and consequently, that the plaintiffs are not entitled to recover any thing, except the premium, to which they are of course entitled, there being no actual fraud in the case.(a)   (1 Johns. Cas. 310.)

LANSING, Ch. J. was of the same opinion.

LEWIS, J. was absent.

BENSON, J. referred to the opinion delivered by him, in the case of *Vandenheuvel* v. *The United Insurance Company*, as to the effect of foreign sentences, as conclusive in this case.

Judgment for the plaintiffs, for a return of premium only.(b)

(a) As to return of premium see *supra*, vol. 1, p. 313, n. (a) to *Delavigne* v. *The United Ins Co.*

(b) [Old note.] Several other similar causes were also decided this term. In *Haskin* v. *The New York Insurance Company*, the vessel was captured by the British, and condemned as lawful prize; no reason being assigned for the condemnation in the sentence. On the principles decided in *Goix* v. *Low*, and *Vandenheuvel* v. *The United Insurance Company*, the court (LANSING, Ch. J. and LEWIS, J. being absent) considered the word American, as amounting to a warranty, and the sentence of the admiralty court, though general, as conclusive. In *Vandenheuvel* v. *Church*, there was no warranty contained in the policy; but in the written instructions to the broker, the ship was represented to be American, and the property of a citizen of the United

States, residing in New York. The vessel was condemned as the property
of Spanish subjects, enemies of Great Britain; and the court considered the
representation as equivalent to a warranty; and the sentence of the admiralty
court as conclusive evidence of the breach of warranty. But by the reversal of
the judgment, in the case of *Vandenheuvel* v. *The United Insurance Compa-
ny,* in the Court of Errors, foreign sentences are now no longer held to be
conclusive.

