## Henry Archibald *versus* The Mercantile Insurance Company.

Insurance was made on goods, the produce of the United States, on board an American vessel, "at and from Boston to St. Pierre's Miquelon, at and from thence to Boston, with liberty to proceed to St. John's, Newfoundland." The assured went to St. Pierre's, where he sold part of the goods, and with the residue he proceeded to St. John's, not knowing that such voyage was prohibited, and there the property was seized and condemned because it had not been brought directly from the United States. It was *held*, that the loss was not covered by the policy, the terms being general, and it not being known to the insurer that an illicit voyage was intended to be insured.

Assumpsit on a policy of insurance made by the defendants on the 28th of June, 1823, whereby they assured to the plaintiff the sum of 2400 dollars " on property on board the schooner Polly, at and from Boston to St. Pierre's Miquelon, and at and from thence to Boston, with liberty to proceed to St. John's, Newfoundland." At the foot of the policy was the following memorandum : — " It is further agreed, that in case of capture or detention the assured shall not have a right to abandon therefor, until proof is exhibited of a condemnation, or of a continuance of the detention by capture, or other arrest, at least ninety days."

The vessel, with property on board belonging to the plaintiff consisting principally of flour, proceeded to St. Pierre's, where she arrived on the 5th of July, 1823, and having there landed and sold some of her flour and the residue of her cargo, she sailed from thence on the 6th of August, with 273 barrels of the flour on board, for St. John's, Newfoundland, where she arrived on the 12th of the same month. The plaintiff was on board and took due measures to enter his vessel there, but understanding that he would not be allowed to enter the vessel

and dispose of her cargo, he applied for leave to depart with the vessel and cargo, but they were both seized, libelled and condemned, on the allegation of having violated the revenue laws of Great Britain by having come from an intermediate foreign port, the cargo being the produce of the United States.

<em>Archibald<br>v.<br>Mercantile<br>Ins. Co.</em>

The statute of 3 *Geo.* 4, *c.* 44, § 3, (passed on the 24th of June, 1822,) enacts that from and after the passing of the act it shall be lawful to import into any of the ports enumerated in schedule A (of which St. John's is one) from any foreign country, &c., articles enumerated in schedule B (of which flour is one) under certain restrictions, of which it is necessary to state only the following:—" Provided always, that no articles enumerated in the said schedule shall be imported in any foreign ship or vessel, unless shipped and brought directly from the country or place of which they are the growth, produce, or manufacture." Upon the trial of the libel before the judge of the Vice Admiralty Court of the province it was determined, that this vessel, by going to St. Pierre's and selling part of her cargo there, came within the proviso, and was not protected from forfeiture, and accordingly the vessel with the cargo carried to St. John's was decreed to be forfeited.

Evidence was admitted, though objected to by the plaintiff, to show that when the application for insurance was made nothing was said on the subject of the voyage being contrary to the laws of Great Britain, that the premium was at the usual rate for common risks on such a voyage, and that the memorandum was in a form adopted by all the insurance offices upon the breaking out of the war between France and Spain, (being similar to one which was in use during the preceding continental war,) which was discontinued on the restoration of peace.

A verdict was taken for the plaintiff, subject to the opinion of the whole Court.

*Prescott* and *Welsh* for the defendants. The rule of law is well settled, that the general words in a policy of insurance do not cover an illicit voyage ; but if a party wishes to insure against a seizure for a breach of foreign revenue or trade laws and discloses such intention to the underwriters, the general words may be sufficient ; or such risk may be expressly stated in the policy ; or if the insurance is to a port where none but illicit

<em>July 5th.</em>

trade can be carried on, it may be implied, where it is not ex-
cepted in the policy.    Here there was no intention on the part
of the pla. ~tiff to be engaged in an illicit voyage, and the policy
does not it. express terms cover such a risk ; *Pollock* v. *Bab-
cock*, 6 Mass. R. 234 ; *Richardson* v. *Maine F. & M. Ins.
Co.* Ibid. 112, 114 ;  *Parker* v. *Jones*, 13 Mass. R. 173 ,
and as there was a permitted trade to St. John's, it will be pre
sumed that the underwriters took the risk of a lawful voyage
only.    In the case of *Andrews* v. *Essex F. & M. Ins. Co.*
lately dete~mined in the Circuit Court of the United States
before *Story* J. [3 Mason, 6,] where the vessel was insured to
Kingston, Jamaica, which both parties supposed to be an open
port, when in fact it was not, and so the vessel was seized for
illicit trade, it was held that the underwriters were not liable
They cited also Valin sur L'Ord. de la Mar. *liv.* 3, *tit.* 6, *art*
49 ; *Leven* v. *Fletcher*, 1 Park on Ins. (7th ed.) 360 ; *Vos* v
*United Ins. Co.* 2 Johns. Cas. 180.

*W. Sullivan contrà.*    The regulations of Great Britain in
regard to trade with her colonies and the change effected in
1822 by *St.* 3 *Geo.* 4, *c.* 44, were as well known to one party
as to the other, and by the use of general words the defendant
impliedly assumed the risk by which the loss was occasioned ;
for if an insurer does not except a risk comprehended in the
words of the policy, he must be supposed to have taken such
risk.    *Meyne* v *Walter*, Park on Ins. (7th ed.) 306 ; *Rich-
ardson* v. *Maine Ins. Co.* 6 Mass. R. 112.    The case of
*Pollock* v. *Babcock* is in favor of the plaintiff.

PARKER C. J. delivered the opinion of the Court.    The
plaintiff claims indemnity of the defendants, on the ground that
this is a loss covered by the general terms of the policy, or at
least that it is within the meaning of the memorandum at the
foot of the policy.

The general question is, whether by the terms of the con-
tract, as expressed in the body of the policy, the defendants
took the risk of an illicit voyage to St. John's; for between
these parties the importation into St. John's must be deemed
to be illicit, it having been so determined by a court of compe-
tent jurisdiction and there being no ambiguity in the sentence
as to the cause of condemnation.    Nor is there any reason to

doubt that the Admiralty Court decided right upon the subject, according to the laws by which it was bound to govern itself.

The law is clearly settled, that an insurance does not cover an illegal voyage, unless by the terms of the contract the intention to do so is expressed, or unless the voyage insured is known to the assurer to be illegal, at the time when he makes the contract ; in which latter case the intention is implied. See 6 Mass. R. 102 and 234, 13 Mass. R. 173, before cited, and numerous other cases cited by Mr. Justice *Story* in *Andrews* v. *Essex F. & M. Ins. Co.*[1] There is no such intention expressed in this policy ; it is in the common form of such contracts where the ordinary perils are intended to be taken.

But it is argued, that this intention is to be inferred from the fact, that the property was insured on a voyage to St. Pierre's, with liberty to go to St. John's. If the defendants had known and must be supposed to have consented that the vessel should go to St. Pierre's and there sell part of her cargo, and from thence to St. John's to finish her outward voyage, there might be some reason to charge them with the knowledge which would make them liable.

By the policy the plaintiff was allowed to take his property to St. John's. The true effect and meaning of this was, to go there in a lawful way. If on touching at St. Pierre's it was found that the cargo could not be disposed of there, she might proceed to St. John's, but it cannot be inferred that it was the intention to allow a sale of part of the cargo at St. Pierre's and the rest at St. John's. Or if this was contemplated, it was because both parties were ignorant that this would be deemed illicit ; and this ignorance would repel any implication that an illicit voyage was intended to be insured. Neither of the parties contemplated a violation of the revenue laws of any country ; but such violation has occurred. The consequences rest altogether upon the assured, because he is secured against

Archibald<br>v.<br>Mercantile<br>Ins. Co.

[1] 3 Mason's R. 6, 18, 20 ; *Planché* v. *Fletcher*, 1 Doug. 251 ; Roccus De Ass note 21 ; *Gardiner* v. *Smith*, 1 Johns. Cas. 141 ; 2 Phillips on Ins. 193, *c*. 13, § 10 ; *Maryland and Phœnix Ins. Co.* v. *Bathurst*, 5 Gill & Johns. 159 ; *Cook* v. *Essex Marine Ins. Co.*, 6 Mass. R. 122 ; *Wheatland* v. *Gray*, 6 Mass. R. 124 ; *Breed* v. *Eaton*, 10 Mass. R. 21 ; *Hayward* v. *Blake*, 12 Mass. R. 176 ; *Russell* v. *Degrand*, 15 Mass. R. 35 ; *Carrington* v. *Merchants' Ins. Co.*, 8 Peters, 495.

Archibald
*v.*
Mercantile
Ins. Co.

nothing but what was within the express terms or the fair implication of the contract. It is a misfortune against which he has not protected himself.

We do not think the case is made any stronger for the plaintiff by the memorandum. In case of capture or detention no abandonment was to be made until proof should be exhibited of a condemnation, &c. This is only a qualification or restriction of the rights of the assured in case of loss under the policy. Capture, detention, &c., must mean illegal arrest, seizure, &c. such as by the general terms of the policy the underwriters are answerable for ; but cannot be extended to enlarge the risk of the underwriters to cases not reached by the words in the body of the policy.[1]

The testimony which was admitted to show the purpose for which this memorandum was at first introduced, was therefore wholly immaterial, and whether it was rightly admitted or no cannot affect the question before us.

The verdict must be set aside and a general verdict entered for the defendants.

---

[1] See *Levy* v. *Merrill,* 4 Greenl. 180 ; 2 Phillips on Ins. 191, 192, *c.* 13, § 9

