JEREMIAH MANSUR & others *vs.* NEW ENGLAND MUTUAL
MARINE INSURANCE COMPANY.

Under an open policy of insurance against fire and other marine risks on provisions in
vessels for a voyage, and " to continue on the property until landed," if, while a quantity
of such provisions in casks, insured at one sum, is being landed at the port of desti-
nation, the casks landed are destroyed by fire, which spreads so rapidly that they can-
not be removed, and the ship with the provisions remaining on board is with difficulty
hauled away from the wharf and saved, the insurers are not liable for those landed and
destroyed.

ACTION OF CONTRACT upon an open policy of insurance against
perils of the seas, fire and the other usual risks, " on provisions
on board steamers, hulls and barges at and from Madison, In-
diana, to New Orleans, and at and thence in vessel or vessels to
Boston; to cover the risk of fire while landed during transpor-
tation ; to cover all provisions shipped t ) said Mansur, and this
company to be advised of the name of each boat and vessel and
amount at risk as soon as known to the assured in Boston;"
" beginning the adventure upon said provisions as aforesaid, and
to continue during the voyage aforesaid, on the vessel until she
shall be arrived and moored at anchor twenty four hours in
safety, and on the property until landed." Under this policy
was insured a quantity of provisions shipped on the steamer
Landis from Indianapolis to New Orleans, and on the ship Mid-
dlesex from New Orleans to Boston, and valued in one gross
sum by indorsement on the policy.

The Middlesex arrived at Battery Wharf in Boston on the
26th of April 1855. On the next day, the men employed in dis-
charging other parts of her cargo began to take out the plain-
tiffs' provisions, without any knowledge by the plaintiffs' con-
signee other than the general notice that the vessel had arrived
at the wharf and was about to discharge her cargo ; and about
half an hour later, while they were so occupied, and after they
had landed one hundred and fifty six tierces and three barrels of
these provisions, the buildings on the wharf took fire, and the
fire spread so rapidly that many vessels lying at the wharf were
seriously injured ; there was no time to move the provisions

landed, either back into the ship or away from the wharf, and they were totally destroyed by the fire; and the Middlesex, with the residue of her cargo, was with great difficulty hauled away from the wharf and saved, and the remaining provisions were afterwards safely delivered to the plaintiffs' consignees at another wharf. This action was brought to recover the value of the provisions so destroyed by fire, and was submitted to the judgment of the court upon the facts above stated.

*R. Fletcher & S. E. Sewall,* for the plaintiffs. The insurance was upon the whole property in gross, forming one entire contract, insuring the whole property until the whole was landed; and fire was one of the risks expressly insured against. The articles put upon the wharf, which were destroyed, being but a part of the property insured, were still under the protection of the policy, the whole not having been landed, and the risk continuing by the contract until it was. *Gardiner* v. *Smith,* 1 Johns. Cas. 141. 3 Kent Com. (6th ed.) 309. The law as settled by these authorities is decisive in favor of the plaintiffs, and the doubt expressed in 1 Phil. Ins. § 972, can hardly be regarded as shaking it. The general principle is well established in this country that, under any insurance of one sum on one subject, though composed of a variety of articles, the subject, so far as it regards losses, is to be regarded as one. This case has a close analogy to those in which a total loss of part of the articles insured for one sum, though in separate packages, has been held to be a partial loss of the whole, and not a partial loss of the particular articles. *Kettell* v. *Alliance Ins. Co.* 10 Gray, 144. *Humphreys* v. *Union Ins. Co.* 3 Mason, 429. *Newlin* v. *Ins. Co* 20 Penn. State R. 312. *Wadsworth* v. *Pacific Ins. Co.* 4 Wend. 33. *Biays* v. *Chesapeake Ins. Co.* 7 Cranch, 417. *Brooke* v. *Louisiana Ins. Co.* 17 Martin, 530. 2 Phil. Ins. § 1773. 2 Arnould on Ins. § 372.

Even if a part of the goods could be separated from the rest, and taken out of the policy, by being landed, still the provision that the risk shall continue " on the property until landed " must be understood to mean until safely landed, so that it may be practicable for the assured to get his property. But it appears

by the facts agreed that it was never practicable for the plaintiffs to get possession of the property before it was destroyed.

*R. Choate & J. M. Bell,* for the defendants.

This case was decided in February 1860.

MERRICK, J. The plaintiffs claim that under the policy declared on they have a right to recover compensation for the loss sustained by them by the burning of that portion of the provisions insured which was landed on Battery Wharf. By the terms of the policy the defendants assumed the risk of the property laden on board the ship Middlesex at New Orleans, during the voyage thence, and until it should be landed at the port of destination.

The Middlesex safely arrived in Boston on the 25th of April 1855, and was moored at Battery Wharf. The consignees were notified of her arrival, and that she was about to discharge her cargo. On the following day, the persons employed in this service commenced the removal of the plaintiffs' property from the ship, placing the tierces and barrels in which the provisions were contained upon the wharf. When only a part of it had thus been landed, the fire occurred by which it was consumed.

The plaintiffs rest their claim to indemnity for this loss upon the ground that the insurance was upon the whole property in gross, and was to continue until all the separate articles and parcels of which it consisted should be safely landed. No objection is made that the notice to the consignees of the intended discharge of the cargo was insufficient, or that Battery Wharf was not the proper place for the landing of the provisions, or that the delivery there was commenced or pursued at an unsuitable or improper time; nor is it suggested that in these, or in any other particulars, there was any negligence, omission or failure in the performance of their duty, on the part of the master or owners of the ship. The basis of the right of the plaintiffs to recover compensation for the loss sustained is therefore very limited, depending solely upon the determination of the question whether the provisions contained in the tierces and barrels put upon the wharf in the due course of discharging the cargo from the ship were still to continue to be under the

protection of the policy until all the remaining parts of the in-sured property should also be landed.

If the solution of this question cannot, in view of the conflicting decisions referred to and relied on by the parties, be said to be entirely free of difficulty ; yet we think that, whether it is considered in reference either to the weight of authority, or the principles of law by which the rights and duties of common carriers and marine insurers are respectively regulated and controlled, the just and true determination of it is not involved in any serious doubt or uncertainty.

In the case of *Gardiner* v. *Smith*, 1 Johns. Cas. 141, which is mainly relied on by the plaintiffs, this same question arose and was determined. Goods were insured from New York to a port in Jamaica, and for twenty four hours after they should be landed there. The goods had been all landed, a part more and a part less than twenty four hours, when they were all lost. The court held, that the policy continued to be in force until the lapse of twenty four hours after the whole were landed ; and the plaintiff accordingly recovered as for a total loss. But the reason given for this determination — that it would be inconvenient to admit a different construction of the terms of the policy, because the risk cannot reasonably be divided and applied to separate parcels — is not very satisfactory, and certainly cannot be regarded as conclusive. Even if any inconvenience in ascertaining the rights and liabilities of the respective parties, on account of deficiency or imperfection in evidence relative to the facts, were to be presumed, such a difficulty could afford no aid, and ought to exert no influence, in construing the terms of a written contract. But in truth there can be no more difficulty or inconvenience arising upon the inquiry concerning the portion of goods which has been landed, or landed for a specified period of time, than necessarily occurs in every instance of partial loss. This must always depend upon the proofs which are or can be adduced in relation to it. The citation from 3 Kent Com. (6th ed.) 309, can hardly be said to give any additional weight to the determination in the case of *Gardiner* v. *Smith* as an authority. It is merely referred to, but no reasons are assigned to fortify or confirm it.

Mr. Phillips, in his treatise upon insurance, does not hesitate to doubt the accuracy of that decision, and to affirm, as the better doctrine, that the risk on each parcel terminated at the end of twenty four hours after it was landed. 1 Phil. Ins. § 972. This doctrine is recognized and sanctioned, after careful examination, in a more recent case in the supreme court of Alabama By a policy of insurance duly executed, one hundred and ninety eight bales of cotton, valued at fifty dollars per bale, shipped on board steamer Helen, were insured from Mobile and "until the said goods and merchandise shall be safely landed at the port of New Orleans." Of these, one hundred and thirty four bales were properly landed, and afterwards destroyed by fire, while the residue remained on board the boat. It was held that the landing of the one hundred and thirty four bales was the termination of the marine risk in relation to that part of the whole quantity insured, and therefore that the underwriters had ceased to be liable as insurers before the occurrence of the fire ; and this for the reason that, upon a just construction of the terms of the contract, it was to be regarded as separable, so as to exonerate them from responsibility for the portion of the goods which was safely landed. *Mobile Marine Dock & Mutual Ins. Co.* v. *McMillan,* 27 Alab. 78.

In *Gracie* v. *Maryland Ins. Co.* 8 Cranch, 84, the policy was upon the cargo of the ship Spartan from Baltimore to Leghorn. Part of the cargo was delivered at the Lazaretto, which was found to be the place of landing according to the usual course of trade at the port of Leghorn ; and afterwards, and before the discharge of the residue of the cargo, the whole was lost by a risk insured against. Judgment was rendered by Marshall, C. J., upon the assumption that the loss was partial merely, and that the policy, covering only that which remained on board, ceased to protect the part of the cargo which had been landed.

In *Osacar* v. *Louisiana State Ins. Co.* 17 Martin, 386, the same doctrine was assumed to be correct, and acted upon accordingly. The vessel, the cargo of which was insured, arrived in the roadstead at Soto La Marina, in Mexico, at a distance of twenty leagues from the town, from which goods are carried up in

launches. Two launches of goods were loaded from the ship and carried up and delivered upon the landing there. A few days afterwards, by reason of a tempest, the ship was compelled to sail away, and was not afterwards heard from. Judgment was rendered for the owners against the insurers for the balance of the cargo, after deducting the value of the goods carried up to the town and put ashore upon the landing. It was contended by the defendants that they were not liable even for this balance, because the ship had been lying so long in the roadstead, before she was driven away by the tempest, that other goods might be presumed also to have been landed. But the court ruled otherwise, and said, that if they would discharge themselves upon the ground that more was landed, they ought to have shown it; thus as distinctly implying as if it had been affirmed in the most direct words, that a policy in these terms continues in force only as to the portion of the insured property which remains in the ship, and that the insurers are relieved from responsibility as far and as fast as other portions of it are properly landed.

In the case of *Fletcher* v. *St. Louis Marine Ins. Co.* 18 Missouri, 193, which has been sometimes thought to bear in an opposite direction, there is nothing which comes in conflict with the doctrine asserted by Mr. Phillips, and sustained in the cases above cited. Under the policy upon which that action was brought, the adventure upon the property was to continue from the lading of it on the vessel until her arrival at the port of destination, and with reasonable time to discharge her cargo there. Part of the cargo was landed after her arrival at the port of destination, when all the cargo was lost. The insurers were held liable for the whole as a total loss. But this decision did not proceed at all upon the ground that the insurers necessarily by the terms of the contract continued to be liable until the whole of the cargo was landed, but upon the finding of the jury, or determination of the court, upon the question whether the vessel had been at her port of destination a reasonable time to deliver her cargo. A further question of fact was also submitted to the jury, whether the goods landed had not in fact been accepted by the consignees; and it was found that they had not.

Upon this brief review of the few decisions which are to be found bearing upon this question, it appears to us that the weight of authority is clearly in favor of the position that, under a policy by which a cargo is insured until landed, the risk of the insurer terminates upon each parcel as it is discharged from the ship and placed upon the wharf where it is the duty of the carrier to deposit it. And this is in conformity to the general rule which the law prescribes in relation to the obligations arising from that species of bailment.

The general rule respecting the delivery of goods at the port of destination is, that it should be made at the wharf where the ship is properly moored. The responsibility of the master will cease, if the consignee has had notice of the time and place of delivery, when the goods have been discharged from the vessel and placed upon the wharf for his use. 3 Kent Com. 215. So where a vessel carried a quantity of onions from Newburyport to Portsmouth, and to the pier wharf in the latter place, which was the usual and a proper place for the landing of that kind of cargo, and then notified the consignee of the arrival of the vessel, and that the onions were there for him, the master was held to have discharged his whole duty, and to be in no respect liable to the consignee for the value of the onions, though they were frozen and destroyed on the wharf in consequence of not having been seasonably taken away. *Chickering* v. *Fowler*, 4 Pick. 371. A delivery at the port of destination, according to the practice and custom usually observed, will discharge the carrier from all further obligation in respect to the goods transported. 2 Arnould on Ins. § 289. "A ship trading from one port to another has not the means of carrying the goods on land; and, according to the established course of trade, a delivery on the usual wharf is such a delivery as will discharge the master." This is the language of Buller, J. in *Hyde* v. *Trent & Mersey Navigation*, 5 T. R. 397, cited and approved by our own court in *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 271.

This rule respecting the delivery of the cargo must, in the absence of any stipulation intended to control it, apply to each part and parcel, as well as to the whole of the goods. The ex-

tire delivery of a cargo of provisions, or of any other property consisting of separate parcels, cannot all be effected in the same moment of time. But as often as separate parcels are landed upon the wharf, where the landing is to constitute a delivery, the power over the goods no longer remains in the master of the ship, but is transferred at once to the consignee, or to some intermediate agent who thenceforward is to act for him. The master, having thus discharged his duty, is thereby relieved from all further obligation to look after and protect the goods, and the marine risk, which in its nature is to continue only during the transportation and landing of the goods insured, must necessarily have the same termination.

*Judgment for the defendants.*