Story, J.,
 

 delivered the opinion of the court, as follows : — The plaintiff in this case contends, that there was a total loss, which authorized an abandonment by both of the perils stated in the declaration viz : 1st. By the perils of the seas ; and 2d. By barratry of the master.
 

 And first, as to a total loss by the perils of the seas. *It seems now clear, that a technical total loss may arise from the mere deterioration of a cargo by any of the perils insured against, if the deterioration be ascertained at an intermediate port of necessity, short of the port of destination. In such case, although the ship be in a capacity to perform the
 
 *32
 
 voyage, yet if the voyage be not worth pursuing, or the thing insured be so damaged and spoiled as to be of little or no value, the assured has a right to abandon the projected adventure, and throw upon the underwriter the unprofitable and disastrous subject of insurance. It has, therefore, been held, that if a cargo be damaged, in the course of the voyage, and it appear that what has been saved is less in value than the amount of the freight, it is a clear case of a total loss. It does not, however, appear that the exact
 
 quantum
 
 of damage which shall authorize an abandonment as for a total loss, has ever become the direct subject of adjudication in the English courts. The celebrated treatise Le Guidon, ch. 7, art. 1, considers that a damage exceeding the moiety of the value of the thing iusured, is sufficient to authorize an abandonment. This rule has received some countenance from more recent elementary writers ; and from its public convenience and certainty, has been adopted as the governing principle, in some of the most respectable commercial states in the Union ; and perhaps, is now so generally established as not easily to be shaken. 1 Johns. Cas. 141 ; 1 Johns. Rep. 335, 406 ; Marsh. Ins. 562, note 92 (Am. edit. 1810) ; Park 194, 6th edition.
 

 But this rule has never been deemed to extend to a cargo consisting wholly of memorandum articles. The legal effect of the memorandum is, to protect the underwriter from all partial losses ; and if a loss by deterioration, exceeding a moiety in value, would authorize an abandonment, the great object of the stipulation would be completely evaded. It seems, therefore, to be the settled doctrine, that nothing short of a total extinction, either physical or in value, of memorandum articles, at an intermediate port, would entitle the assured to turn the case into a total loss, where the voyage is capable of being performed. And perhaps, even as to an extinction in value, where the commodity specifically remains, it may yet be deemed not quite settled whether, *under the like circumstances, it would authorize an r¡i. abandonment for a total loss.
 
 Dyson
 
 v. Rowcroft, 3 Bos.
 
 &
 
 Pul. 474 [*48 ;
 
 Maggrath
 
 v. Church, 1 Caines 212 ;
 
 Cocking
 
 v.
 
 Fraser,
 
 Marsh. 227 ; Park 152, 6th edition.
 

 The case before the court is of a mixed character. It embraces articles of both descriptions; some within, and others without, the purview of the memorandum. If, in such a case, a deterioration exceeding a moiety in value, be a proper case of technical total loss, it will follow, that in many cases, the underwriter will, indirectly, be rendered responsible for partial losses on the memorandum articles. Suppose, in such a case, the damage of the memorandum articles were forty per cent, and to the other articles ten per cent., in the whole amounting to half the value of the cargo, the underwriter would be responsible for a technical total loss, and thereby made to bear the whole damage, from which the memorandum meant to exempt him. Indeed, cases might arise in which the damage might exclusively fall on memorandum articles ; and if it exceeded the moiety in value of the whole cargo, might load him with the burden of a partial loss, in manifest contravention of the intention of the parties. A construction which leads to such a consequence cannot be admitted, unless it be unavoidable. And we are entirely satisfied, that such a construction ought not to prevail. The underwriter is, in all cases of deterioration, entitled to an exemption from partial losses on the memorandum articles ; and in order to effectuate this right, it is necessary, where a technical total loss is sought to be maintained, upon the
 
 *33
 
 mere ground of deterioration of the cargo, at an intermediate port, to a moiety of its value, to exclude from that estimate all deterioration of the memorandum articles. Upon this principle, on a cargo of a mixed character, no abandonment for
 
 mere deterioration in
 
 value, during the
 
 voyage,
 
 can be valid, unless the damage on the non-memorandum articles exceed a moiety of the value of the whole cargo, including the memorandum articles. The case is considered, as to the underwriter, the same as though the memorandum articles should exist in their original sound state. In this way, full effect is , Q, given to the contract of the parties. The underwriter *is never made •* responsible for partial losses on memorandum articles, however great; and the technical total losses for wjhioh alone he can be liable, are such as stand unaffected by the perishable nature of the commodity which he insures.
 

 In the present case, the facts alleged by the plaintiff do not show a depreciation of a moiety in value, excluding the memorandum articles. There is no evidence of the
 
 quantum
 
 of depreciation of any part of the cargo. The forced sales at Antigua could not, under the circumstances, constitute a medium by which to ascertain it. Admitting, therefore, the rule to be correct, that the party had a right to abandon, where the depreciation exceeds a moiety of the value, the plaintiff has not brought himself within that rule, as applied to a cargo of a mixed character like the present. The court below were right, therefore, in deciding that there was no total loss proved by the perils of the seas.
 

 The next question is, whether there was a total loss by the barratry of the master ? And this depends exclusively upon the consideration, who was owner of the brig for the voyage ; for it is conceded, on all sides, that the conduct of the master was barratrous, if he was in a situation to commit that offence. Barratry is an act committed by the master or mariners of a ship, for some unlawful or fraudulent purpose, contrary to their duty to their owners, whereby the latter sustain an injury. It follows, therefore, from the very terms of the definition, that it cannot be committed by a master, who is owner for the voyage ; because he cannot commit a. fraud against himself. But it may be committed against a person who is owner for the voyage, although he may not be the general owner of the ship. A person may be owner for the voyage, who, by a contract with the general owner, hires the ship for the voyage, and has the exclusive possession, command and navigation of the ship. Such is understood to have been the case of
 
 Vallejo v. Wheeler,
 
 Cowp. 143. But where the general owner retains the possession, command and navigation of the ship, and contracts to carry a cargo on freight, for the voyage, the charter-party is considered as a mere affreightment, sounding in covenant, and the freighter is not clothed with the char-. *501 acter *or legal responsibility of ownship ; such was the case of
 
 Hoo
 
 e v.
 
 Groverman,
 
 in this court (1 Cr. 214). In the first case, the general freighter is responsible for the conduct of the master and mariners during the voyage ; in the latter case, the responsibility rests on the general owner. On examining the charter-party in the present case, there can be no doubt, from the terms and stipulations, that it falls within the latter class of cases. The master, who was the general owner, retained the exclusive possession, command and management of the vessel, and she was navigated at his expense during the voyage. The whole charter-party, except the introduc
 
 *34
 
 tory clause, sounds merely in covenant. The ownership was not divested by the covenant of affreightment, and .consequently, the master was incapable of committing barratry. There was, then, no total loss on the second count in the declaration.
 

 The opinion of the circuit court on this exception must be sustained. But there are other exceptions on the record, in which it is admitted by the parties that the circuit court erred. The points intended to be raised in these exceptions have, in effect, being decided by this court in
 
 Gaze and Richaud
 
 v.
 
 Baltimore Insurance Company,
 
 at February term 1813. (7 Cr. 358.) For the errors in these exceptions, the judgment must be reversed, with directions to.the circuit court to award a
 
 venire facias de novo.
 

 Judgment reversed.