Parker C. J.
delivered the opinion of the Court. This is an action of replevin for certain ox horns. The case finds that these horns are part of the proceeds of a cargo, shipped by Edward Lander on board the brig Holly, owned by the defendant but chartered to Lander by an instrument under seal, dated June 3, 1826, by which instrument the brig is let to freign. to Lander from Boston to the east coast of South America and back to Boston. The defendant covenanted in the charter-party to put and keep the brig in good condition for and during the voyage, to victual and man her, and that Lander should load her at Boston and at Rio Grande with such goods and merchandise as he should think proper, contraband *251 goods excepted, and should appoint the master of the brig. In consideration of which, Lander covenanted to pay the defendant or his order, in full for the freight or hire of the brig and appurtenances, six hundred dollars per month, commencing from the date ; and so in proportion for a less time as the brig should be continued in the service mentioned, in thirty days after her return to Boston. And there are further covenants respecting the purchase of the vessel, which are not material to the question before us.
The vessel, soon after the execution of this instrument, sailed on the voyage described therein, with a master on board appointed by Lander, and a cargo wholly the property of Lander.
On the 11th of July following, Lander, for a valuable consideration, assigned the cargo to the plaintiff, and indorsed to him the bill of lading and invoice thereof, and also two policies of assurance which he had caused to be effected thereon ; of which notice was sent on to Brace, the master of the brig, which reached him at Rio Grande, but not until after the vessel had sailed from thence on her return to the United States ; Brace having remained there to dispose of some of the cargo, and having put in as master one Clark, to whom he gave verbal orders to proceed to New York, and there, after delivering the freight taken for that place, to await the orders of the defendant or Lander. On receiving from the plaintiff notice of the assignment of the cargo to him by Lander, after the sailing of the brig, Brace stated an account with the plaintiff, in which he credited him with the proceeds of the outward cargo and debited him, among other things, with the horns. Clark executed a bill of lading in common form, which expressed that the goods shipped were to be delivered to Lander or his order or assigns, he or they paying freight for the same, but without stating any sum or rate of freight. This bill of lading states that the brig is bound for New York, and that the goods are to be delivered at New York or Boston.
The brig arrived at New York about the 7th of February, 1827, with the horns and a quantity of hair and hides on board shipped for Lander, and also property taken on freight for W. Whitlock & Co., a mercantile house ir New York, the *252 freight of which amounted to 1014 dollars. This sum has been paid to Clark, and is claimed by the defendant; but his claim is contested and a suit is pending therefor. It does not therefore come in question in the present suit. Who contests the defendant’s right to receive it of Clark, does not appear ; if the present plaintiff, he certainly has no pretence, under his assignment of the cargo, to claim freight for other goods.
Before the arrival of the vessel at New York, Lander failed and became insolvent, and the defendant has no adequate security for the money due on the charter-party, except the lien which he claims to have on the horns and other property imported in the brig. The plaintiff demanded the hides, hair and horns, without tendering any thing for freight, insisting that he was not liable therefor. The defendant refused to deliver the property, and instructed the master to retain the same for ■the freight. The defendant took possession of the vessel before the discharge of her cargo at New York, and appointed Clark to continue master under him.
Upon this state of facts two questions have been raised : — 1. Whether the defendant had a lien upon the goods shipped on board the vessel by Lander, for the hire of the vessel, in virtue of the contract subsisting between them, so that the goods passed to the plaintiff by the assignment, subject to such lien;—3. If not, whether in consequence of the vessel’s going to New York without necessity, to carry freight there, the charter-party ceased to be binding upon the defendant, so. that he had a right to take possession of the vessel there, and by that means acquired a right to freight on such merchandise as he found on board thereof.
In regard to the first question, it seems quite clear, from tin examination of many authorities, that from the nature of the contract of charter-party which was entered into between the defendant and Lander, the former had no lien upon the goods imported, but that his only security was personal against Lander according to the covenants in the instrument.
The general doctrine on the subject is thus stated ty Lawes, in his treatise on charter-parties, p. 203. “ The lading of the ship, in construction of law, is tacitly bound for freight, which is, in point of payment, preferred to any other *253 debts to which the goods are liable ; for the goods remain, as it were, bailed or pledged as a security for the freight; but by special contract, this right may be dispensed with.” So in Molloy, bk. 2, c. 4, § 12; and he adds, that goods thus subject to freight are not attachable to the prejudice of the owner of the vessel. So also in Beawes’ Lex Mercatoria, tit. Freight. And in 3 Chitty on Com. & Man. 417, it is stated, that “ the time and manner of payment of freight are frequently regulated by express stipulations in a charter-party, or other written contract ; and when that is the case, the payment must be according to such stipulations ; but if there be no express stipulation to the contrary, or inconsistent with the right of lien, the goods conveyed generally remain as a security until the freight is paid,” &c. 1 Doug. 104, — Abbott (4th ed.) 258, — and 4 Barn. & Aid. 50, are cited in support of this proposition. Chitty, in the next page (418), proceeds : — “In some cares this right of lien cannot arise, as where the owner of the vessel, by charter-party or other contract, parts with the possession of the vessel, or, in other words, demises the ship to the owner of the cargo for the time of the hiring. It depends on the intention of the parties and the words of the instrument.”
There are several cases in the English books where this question of lien has been discussed, and although they are not all perfectly consistent with each other, they all admit the general doctrine, with the qualification as stated in Lawes and Chitty above cited. Most of them turned upon the question whether the owners of the ship had entirely parted with the possession, because, if they had, it was difficult to maintain a lien, which, according to familiar principles, is the retaining of a thing in actual possession belonging to another, until some debt or duty due from the owner to the holder is discharged.
The most usual contracts of affreightment in England are those by which the owner of the vessel undertakes to carry the merchandise for the shipper, and in such case, whether the freight is reserved in the shape of a charge upon the goods, or hire of the vessel by the month, by the ton, or a gross sum for the voyage, seems to make no difference, for *254 the vessel is still in the possession of the owner, and of course th® merchandise. And it is also most usual to stipulate that the goods are bound for the freight, or that freight shall be paid or secured on delivery ; and in all such cases the lien is considered perfect, notwithstanding there are covenants in the charter-party for the payment of freight.[1] And it is also settled, that in such cases, if other persons ship goods in the vessel by contract with the hirer, for a freight different from that which is agreed on in the charter-party, the goods are held for the freight due upon them to the owner of the vessel, because the shipper may require to be informed of the contract between the hirer and the owner, and may there see that the goods to be laded are bound for the freight. Faith v. E. I. Company, 4 Barn. & Aid. 640; Grade v. Palmer, 8 Wheat. 605. But these cases go upon the ground, that the special contract by charter-party, so far from providing any thing like an abandonment or waiver of the common law right to retain the goods for the price of transportation, recognises and expressly enforces that right. And they also consider the possession of the vessel, by the terms of the contract, to remain in the general owner.
But there is a class of cases of a quite different aspect, which very clearly and fully adopt the qualification of the right of lien as stated in the elementary books before cited, Lawes and Chi tty, which writers extracted their propositions from the various judicial decisions upon the subject.
Thus in Phillips v. Rodie, 15 East, 547, it was decided, that the ship-owner has no lien on goods, for any thing beyond the freight on the specific goods, although by the covenants in the charter-party he has a right to a greater compensation, notwithstanding there is a stipulation that the goods on board shall be bound for performance of the covenants. This case establishes the distinction between the freight which ;s attached to the goods, for which there is a lien, as it is not waived by the charter-party, and the sum due on the contract for the hire of the vessel, for which there is no lien. And the *255 same pomt was decided in chancery. Gladstone v. Birley, 2 Meriv. 401.
A case in the Common Pleas in England, Hutton & al., Assignees, v Bragg, 7 Taunt. 14, is worthy of notice, if it were only for the very handsome manner in which, in a subsequent case, (Christie v. Lewis, 2 Brod. & Bing. 416,) Dallas C. J. apologizes for adhering to, and Park J. for abandoning their several opinions. The case itself however is right in principle, and was overruled on account of a supposed wrong construction of the charter-party, rather than for any erroneous decision of a strictly legal character. The defendant, Bragg, was the owner of a ship. He chartered her to the bankrupt for a voyage from London to the Cape of Good Hope and back. He was to have 2100Z. for the voyage, one fourth part immediately by bills on London at two months, one fourth by like bills at four months from clearing out, one fourth by government bills in ten days after discharging at the Cape of Good Hope, and one fourth by bills at three months from the time when the vessel should be reported inwards at London ; and for performance the hirer bound the goods laden on board. The last payment in bills could not be made, the hirer having become bankrupt, and some of the other bills were not paid, and 70 pipes of wine, part of the cargo, were held by the defendant, the ship-owner. It was determined that he had no lien, because he had no possession of the vessel, it being by the contract transferred to the hirer. In the case in Brod. & Bingh. this decision was overruled for the reason before stated. But all the judges were of opinion, that if the possession had gone entirely from the owner, the decision would have stood.
In the case of Tate v. Meek, 8 Taunt. 280, a decision took place before the same judges who decided the preceding case of Hutton v. Bragg, which shows very clearly the true distinction as taken by the court. In the charter-party it was stipulated that there should be paid to the owner a certain sum per ton on the merchandise, viz. 300Z. in cash on the day when the vessel should be reported inwards, the remainder by a good bill or bills, payable at London, at two months after date from the day on which the delivery should be completed. *256 The hirers had assigned their interest to the plaintiffs, who demanded the goods without tendering the freight, and the defendant refused to deliver ; in which he was upheld by the court, on the ground that the delivery of the goods and payment of freight are concomitant acts, which neither party is obliged to perform without the other being ready to perform the correlative act.
The case of Yates al. v. Railston, and still another case (Yates v. Meynell) were decided on the same principle. 8 Taunt. 293, 302.
The American cases in which this question has been brought into view, have been decided upon the principles finally adopted in England.
In Marcardier v. Chesapeake Ins. Co. 8 Cranch, 49, a distinction is suggested which lies at the foundation of the law on this subject, namely, that a person may be owner for the voyage, who by a contract with the general owner hires the ship for the voyage, and has the exclusive possession, command and navigation of the ship. But where the general owner retains the possession, and contracts to carry a cargo on freight for the voyage, the charter-party is considered a mere affreightment, sounding m covenant. And it was in reference to this distinction that the case in 8 Wheat, before cited was determined.
Now on recurring to the charter-party, which is the foundation of the defendant’s claim, in this view of the case, it will appear manifestly that there are two grounds, upon both of which probably, upon one certainly, his claim of lien upon the goods must fail.
One is the possession of the vessel. She is let to hire for the voyage, for a certain sum per month, and the master is appointed by Lander the hirer. Lander then had the exclusive possession, command and navigation of the vessel, so that the cargo on board was in his, and not in the defendant’s possession. He had nothing to retain.[1] He had got possession to be sure, but that possession was tortious, unless it should be deemed otherwise on the other point in the case.
*257 But if it should be questioned whether such is the effect of the contract, considering that the defendant was to victual and man the vessel at his expense, the other point is free from any such difficulty. There is no express provision that the cargo is bound for the hire. Nor is it even implied, for the delivery of the cargo and the payment of the charter money are not concomitant acts. On the contrary, the money is to be paid in thirty days after the arrival of the vessel at Boston. By necessary implication, therefore, the vessel is to be discharged before the payment. The cargo is to go into the hands of the hirer, and the lien does not commence until thirty days after. This is wholly inconsistent with the doctrine of lien, for the voluntary parting with the thing for a moment destroys it. Can it be pretended that the goods are to remain on board until the time of payment arrives ? This would effectually destroy the credit intended to be given. The very purpose of the time given was, that the hirer might have an opportunity to sell his cargo, to enable him to pay for the charter. The goods then were assignable, attachable, liable to be seized on execution, and the defendant had no means of preventing it, for he had no legal demand, no debt was due, until the thirty days had expired.
To adopt the language of Lord Hardwicke in the case ot Paul v. Birch, 2 Atk. 621, — “A person that lets his ship to hire, ought to take care that the hirer is a substantial man, and sufficient to malee good the hire, and it is his business to look into this.”
A number of cases have happened in New York, in which the doctrine we think applicable to this case has been affirmed. I select two only of the most recent.
Chandler v. Belden, 18 Johns. R. 162. Spencer C. J. delivering the opinion of the court says, — “ The right to retain the cargo for freight has grown out of the usage of trade, and it does not exist, nor can it be enforced, when the parties have expressly regulated the time and manner of paying freight, by stipulations m a charter-party, and especially if the cargo is deliverable before the arrival of the periods of payment.” And in Clarkson v. Edes, 4 Cowen, 478, the same doctrine s held and enforced by Savage C. J.
*258 Thus we think our way is clear to decide, that the defendant, after he had chartered his vessel in the manner shown by the charter-party, had no claim of lien upon the cargo for the hire, but his whole security was in the personal engagement of Lander.[1] And the bill of lading signed by the master in Brazil, whereby the goods are to be delivered to Lander or his order or assigns, he or they paying freight, makes no difference, as the charter-party wholly supersedes the bill of lading, except as a usual document to show to whom the goods are to be delivered, and to make the master liable. Abbott, (ed. 1810 by Story,) 215, note, cites Hunter v. Prinsep, 10 East, 378.
On the second question no authorities have been cited, nor have we been able to find any.
Did the going to New York to deliver freight there, with intention to terminate the voyage there or at Boston as the owner of the vessel or the cargo should direct, rescind or vacate the charter-party, so as to give the defendant the right ;to claim the freight or the merchandise on board and retain it until paid, in the same manner as if there had been no charter-party and the voyage had terminated in the usual manner ? According to the charter-party the voyage home is from Rio Grande to Boston ; but the vessel being hired by the month, the delay (if any) could cause no injury to the defendant. It would seem to be a close construction of such a contract, which should prevent the charterer from touching at intermediate ports in the course of the voyage, when he has purchased the use of the vessel, and is to pay for the hire of her as long as he employs her. Without doubt, if he should undertake to send the vessel upon a different voyage from the one described, having no view to that voyage but to another, the owner might repossess himself of the vessel and prevent such a fraudulent act. But the mere fact of taking freight for, and delivering it at a neighbouring port, entirely in the course of the voyage, we can hardly think can be followed by that consequence. If the vessel were hired by the run, or the freight were to be paid only on such goods as should be laded on *259 Board, the owner would have a remedy for any delay or damage by an action of covenant. But where the vessel is let to hire as in this case, no injury can be perceived, or if any has happened, a remedy can be had without so serious a wrong to the other party as the breaking up of the whole contract. It is said in argument, that the same fact would constitute a deviation, so as to avoid any insurance which the defendant might have on the vessel for the voyage described in the charter-party. If this be true, and we think it is, provided no right was secured in the policy to touch and stay or trade, certainly an action would lie against the charterer on the implied covenant to pursue the voyage home without deviation.[1] But because a policy of assurance would be thus avoided, it does not follow that the voyage home could be broken up, the cargo discharged, and the charterer obliged to seek another vessel for the transportation of his cargo to the place of its destination.
We do not perceive how the defendant could have acquired the right to freight on this cargo, which had been sold by Lan der to the plaintiff without the incumbrance of freight. Surely if the vessel had come directly to Boston, he could not. He chooses to prevent the accomplishment of the voyage, but he does not thereby acquire any new rights. The freight entered into the value of the goods when purchased, and the plaintiff must therefore be considered as having paid it to Lander. The defendant’s original security remains, upon the charter-party, unless he has impaired it by his own act. The vessel remained Lander’s during the voyage, and the voyage would have terminated at Boston but for the interference of the defendant. If there is freight due for the return cargo, it is due to Lander, for he was the owner of the vessel pro hac vice, and the plaintiff must account to him for the price of the goods, which will include the freight.
There are reasons for strictness in regard to insurance contracts, which do not apply with the same force to charter-parties. The insurer has no remedy for a defect of strict per *260 formance, but in avoiding the contract. The least deviation out of the usual track, the stopping at a port longer than may be absolutely necessary, may be the cause of a loss, but never can be proved to be so. The only safety for the underwriter is to exact a strict compliance with the contract. It is otherwise in a charter-party, for the covenants give a remedy for any actual loss oi damage. Now let us suppose that the vessel had returned to Salem instead of Boston, intending to go to Boston after leaving some goods taken on freight for Salem; shall the owner have a right to take possession and retain the cargo belonging to others as security for his charter money ? Shall he rescind the contract entirely, and stand in the place of the hirer in regard to the goods on board ? We think not If a completion of the voyage according to the contract was intended, we do not think such a slight deviation from it vacates the contract.
Lander having hired the vessel by the month, with liberty to put any goods on board except contraband, he had a right to take the goods of other people on freight. The freight may have been paid in advance. Shall the goods be liable to freight again in consequence of the rescinding of the contract by Woods ? It must be remembered, that Woods has his security in the covenants in the charter-party. The insol vency of Lander was a contingency which he ought to have provided against. It cannot give him rights distinct from his contract. He might have secured a lien upon all goods which should be laden on board the vessel, whether belonging to Lander or any other person, but he did not. On the contrary, he gave Lander thirty days’ credit after the arrival of the vessel. The vessel would probably have come to Boston, but for the interposition of the owner. And he knew this, for she was to be discharged at New York or at Boston, according to the directions of himself and Lander. He chose to put an end to the voyage at New York, and the other party, Pickman, assenting, his right to freight under the charter-party accrued in thirty days from that time.
Upon the whole, in the absence of all authority upon the subject, ánd considering that the owner of the vessel has a emedy on his covenants, for any injury he might sustain bv *261 a slight departure from the strict course of the voyage, and that he was to be paid by the month for the use of the vessel, we are inclined to think that Boston, as the terminus of the home voyage, was inserted rather to determine the time from which the payment of freight is to be reckoned, than as limiting the voyage strictly to that port. The general rule is, that the construction of a charter-party shall be liberal, agreeable to the real intentions of the parties. Abbott (3d ed.), 203. Hence where a vessel was taken on charter by the month, freight to be paid on her arrival in the Thames, and after an absence of two years she was lost before getting into the Thames, it was considered nevertheless that the freight should be paid, because the place of her arrival was mentioned only to designate the time when the freight should be payable. Malyne, 101 ; Abbott (3d ed.), 297.

Judgment for the plaintiff on the verdict.

[1]

 See Schooner Volunteer and Cargoy 1 Sumner, 551, 577.

 See Drinkwater v. Brig Spartan, 3 Amer. Jurist, 26; 3 Kent’s Comm (3d ad.) 220, 221, 137, 138; Holt on Shipping, 460, 471.

 See 3 Kent’s Comm. (3d ed.) 220, 221.

 See Abbott en Shipping, (4th Amer. ed.) 192; Andrew v. Adams, l Ringh N. R. 29

 See Schooner Volunteer and Cargo, 1 Sumner, 551.