Mr. Justice Field
delivered the opinion of the court:
If we could import into the findings of the court the facts stated in its opinion and in the brief of appellant’s .counsel, this case would be presented for our consideration with much greater completeness than at present. It would then clearly appear that what is .termed an impressment of the vessel of the *8 claimant into the military service of the United States was only a notice to its captain from the assistant quartermaster at Saint Louis that the Government would require its service for a trip to Memphis, Vicksburgh, and other points, accompanied with a statement of the per diem compensation which would be allowed for its use, and for the subsistence of the men in addition to their wages, and fuel for the vessel, to which notice and service no objection was made by the captain or the claimant. It would also appear that the claimant entered upon the service with alacrity, and that, in conformity with the terms designated as compensation, his account was rendered to the United States and paid. Under these circumstances the transaction could only be treated as a voluntary arrangement, notwithstanding the peremptory tone on the part of the assistant quartermaster-general, with which the negotiation with the captain was opened-.
In Reed v. The United States, (11 Wall. R.,) the same military officer' at Saint Louis, the assistant quartermaster, in June, 1865, applied to the owners of another steamer to transport supplies from that port to Port Berthold, on the Missouri, but they declined the service on account of the lateness of the season. He then ordered them to prepare for the trip, informing them that in case of refusal the vessel would be impressed. They protested, but under the orders given put the boat in readiness, received the cargo, and performed the service required. With the order to prepare for the trip, the assistant quartermaster, as in this case, fixed the per diem compensation for the use of the vessel, which appears to have been satisfactory to the owners, for it was received by them without objection. Upon this state of facts the court held that, though the owners originally objected to the service, they in fact rendered it as a matter of contract upon the compensation fixed by the assistant quartermaster; and that the vessel having grounded on its return trip, and been destroyed while thus grounded by an ice-freshet, no liability for its value attached to the United States under the Act 3d March, 1849, (9 Stat. L., p. 414, § 2,) or the amendatory Act 3d March, 1863, (12 id., p. 743, § 5.) The fact that the steamer remained, in performing the trip required, under the control and management of its owners, was considered as conclusive that it was not in the service of the United States within the meaning of those acts; and that a vessel could only *9 be regarded as in snob service when let to the Government, and the owners had parted with its possession, command, and management. So long as the owners retained the possession, command, and management of the steamer the United States were only charterers of the same upon a contract of affreightment, and liable as such, and were not clothed with the character or responsibility of ownership. And it was also held that the adjudication of the Third Auditor in allowing, in supposed conformity with the acts mentioned, for the value of the vessel lost, could not have any influence upon the decision of the court.
The facts stated in the opinion of the Court of Claims and by the appellant’s counsel in his brief bring the present case fully within the reasoning and authority of Reed v. The United States. And although the findings in the record are defective in not stating the particulars of the contract, and it is found that the steamer was impressed into the military service, yet it distinctly appears that the terms upon which the vessel would be employed were stated at the time by the assistant quartermaster, and that the vessel while performing its service was manned by officers and men engaged by the claimant; that is, that the vessel was in his possession and under his command and management, and not in the possession or under the command and management of the United States; and that his account with the Government for its use and service as a transport until its destruction by fire was allowed and paid. We must therefore hold, as was held in the case cited, that whatever the force or coercion may have been which attended the original impressment, as it'is termed, the transaction ultimately ended in a contract of affreightment upon the terms stated by the assistant quartermaster. As charterers of the vessel under such a contract, the United States were not liable to the claimant for its loss, and, of course, could not be to the insurance companies which were subrogated to his rights. (Macardier v. The Chesapeake Insurance Company, 8 Cranch, 39; The Schooner Volunteer, 1 Sumner, 551; The Brig Spartan, 1 Ware, 153; Donohue v. Kittel, 1 Clifford, 138.)
Judgment affirmed.
Mr. Justice Miller dissented.
Mr. Justice Strong did not take part in the decision.