# ST. PAUL FIRE AND MARINE INSURANCE CO.

## *vs.*

## HARRISON T. BEACHAM, Trading as J. S. Beacham & Bro.

*Insurance: marine; free of "particular and general average."*

In marine insurance, the term *"particular average"* means a partial, as distinguished from a total, loss, or a general average loss.                                                                p. 416

A general average loss is the amount lost to the owner of the ship, cargo, freight or other interest for any voluntary sacrifice made or any extraordinary expense incurred by one interest for the benefit of all.                                   p. 416

Under the American rule, there is a *constructive* total loss, although not *actually* total, when the insured has the right to abandon the vessel, and this right inures to him if the cost of repairing the vessel exceeds one-half her value when repaired, in which case the owner, by giving the underwriter notice of abandonment, may surrender his vessel and claim for total loss.
p. 416

There is an actual loss when the subject-matter is wholly destroyed or lost to the assured, or where there remains nothing of value to be abandoned to the insurer.          p. 417

A policy of marine insurance insuring the assured in the sum of $2,400 "on bills and disbursements *free of particular and general average,"* if equivalent to "against total loss only," includes constructive total loss.                          p. 417

*Decided April 26th, 1916.*

Appeal from the Superior Court of Baltimore City. (Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Stuart S. Janney* (with whom were *Albert C. Ritchie, Robertson Griswold* and *Harrington, Bigham & Englar* on the brief), for the appellant.

*John H. Skeen* (with whom was *Arthur D. Foster* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee in this case brought an action of assumpsit against the appellant in the Superior Court of Baltimore City upon an insurance policy, the certificate of which is incorporated in the declaration. This certificate is dated May 29, 1913, and provides that the company insures the assured in the sum of $2,400 "on bills and disbursements *free of particular and general average.*"

The declaration alleges that the effect of issuing said certificate of insurance was that the defendant company insured the plaintiff in the sum of $2,400 against the loss by said plaintiff (on account of marine disaster to the schooner "Josephine"), of a certain unpaid balance due him on a repair bill for work and labor done and goods and materials furnished by him to and upon said schooner, amounting to the sum of $2,473.17, as of June 7, 1913.

It also alleges that said schooner "Josephine" in the month of July, 1913, "met with a marine disaster while on a voyage from Savannah, Ga., to New York, N. Y., to wit: Stranding off Ocracoke, N. C., and as a consequence of said stranding became a *constructive total loss;* and that said disaster was not a case of *particular or general average.*"

It is unnecessary to state more of the declaration in deciding the question presented by this appeal. The defend-

416   ST. PAUL F. & M. INS. CO. vs. BEACHAM.

Opinion of the Court.                           [128

ant demurred to the declaration and the demurrer being over-ruled, and the defendant failing to plead within the time allowed him, a judgment was entered for the plaintiff upon his motion because of such default of the defendant.

The sole question presented by this appeal is whether the appellant is liable upon the policy sued on in case of *"a constructive total loss"* of the vessel insured.  If it should be held that the insurer is liable in such case then the demurrer was properly overruled, but on the other hand if there is no such liability the demurrer should have been sustained.

In considering and determining the question involved, it may be well for us to state the meaning of some of the terms here used.  By the use of the term "particular average" is meant a partial loss as distinguished from a total loss or a general average loss.  26 *Cyc.* 670; *Hughes on Admiralty,* page 83; *Arnould,* 9th Edition, sections 1008, 1009 and 1023.  A general average loss in marine insurance is the amount lost to the owner of the ship, cargo, freight, or other interest for any voluntary sacrifice made or any extraordinary expense incurred by one interest for the benefit of all, or as defined by Mr. Hughes, in his work on *Admiralty,* page 39:  "It is the principle of law which requires that the parties interested in a marine venture shall contribute to make up the loss of the sufferer when there is a voluntary sacrifice of part of the venture made by the master, as representative of all concerned, for the benefit of all."

The certificate in this case was issued free of both particular and general average, and as we have said, the declaration alleges that there was a constructive total loss of the vessel.

Under the American rule there is a constructive total loss, although not actually total, when the insured has the right to abandon the vessel, and this right inures to him if the cost of saving and repairing the vessel exceeds one-half her value when repaired, in which case, the owner by giving the underwriter notice of abandonment may surrender his vessel and claim for total loss.  By the English rule it is only so when

such cost exceeds the full value. *Hughes,* pp. 78 and 80; 26 *Cyc.* 689; *Arnould's Marine Insurance,* 9th Edition, section 1117.

There is an actual total loss when the subject matter is wholly destroyed, or lost to the assured, or where there remains nothing of value to be abandoned to the insurer. 26 *Cyc.* 686; *Hughes,* 78.

It is conceded by the plaintiff that to enable him to recover under this policy, it being issued free of particular and general average, it must be shown that there was a total loss of the vessel, but that it need not be an *actual* total loss; that a *constructive* total loss is all that need be shown to entitle him to recover.

The defendant, however, insists that an *actual* total loss must be shown, otherwise, the plaintiff can not recover under the policy. It is admitted by the demurrer that there was a constructive total loss, and thus we have only to determine the legal effect of the clause contained in the policy *"free of particular and general average."*

" 'Particular average' as used in this policy, means partial loss, and 'free of particular average' is equivalent to *'against total loss only.' "* *Pierce et al.* v. *Columbian Insurance Co.,* 14th Allen, 320.

In *Adams* v. *McKenzie,* 32 L. J. C. P. 92, a policy of insurance on a ship contained a clause that the insurance was against "total loss only," and there was shown to be a constructive total loss. It was there held that the owners were not excluded by the terms of the policy from recovering upon it.

In *Heebner* v. *Eagle Insurance Co.,* 10 Gray, 131, the policy insuring the steamer Chesapeake and upon which the action was brought contained the clause *"against total loss only."* One of the questions there presented was whether the plaintiff could recover for a *constructive* total loss. CHIEF JUSTICE SHAW, speaking for the Court, said: "The natural and grammatical construction of the language, 'liable for a total loss only,' is, any total loss, as that term is known and

understood by those conversant with the practice and law of insurance. The distinction between an actual and a constructive total loss is well known and understood; and if the parties intended to qualify it, and limit the liability to either particular species of total loss, we think they would so have expressed it. But there is nothing in the policy to indicate that the insurers are not to be liable for a constructive total loss, if perfected as such by an abandonment; and we see nothing in the principles of the law of insurance from which such a distinction can be implied against the letter of the contract. * * * There seems to be no reason in the nature of the contract, or the business to which it refers, why the liability of the insurers should not extend as well to a constructive as to an actual total loss, * * * all further navigation of the vessel was defeated, and put an end to * * *. The Courts are therefore of opinion that under this policy the defendants were liable for a constructive total loss by the perils insured against, if followed by a legal abandonment."

In *Green* v. *Pacific Mutual Insurance Company,* 9th Allen, 217, a Whaling vessel and its outfit was insured against *"total loss only."* The Court there said, following its former decision in *Heebner* v. *Eagle Ins. Co., supra,* that "under a policy so framed the insured have a right to claim indemnity for a constructive as well as an actual total loss," and in *Pierce* v. *Columbian Insurance Co., supra,* the Court said, "insurance 'against total loss only' covers a constructive total loss." *Burnham* v. *Boston Marine Ins. Co.,* 139 Mass. 299; *Arnould,* sec. 1091.

The defendant in support of its position relies chiefly upon the case of *Washburn & Moen Mfg. Co.* v. *Reliance Marine Ins. Co.,* 179 U. S. 1. The insurance in that case was upon a cargo of wire—a memorandum article—and in the clause contained in the policy the cargo was warranted by the assured *"free from average unless general";* and by the rider "free of particular average, but liable for absolute total loss of a part if amounting to 5%." The Court held that the memorandum and marginal clauses were not contradictory,

ST. PAUL F. & M. INS. CO. vs. BEACHAM. 419

Md.]                    Opinion of the Court.

but were to be read together. It said "the warranty or
memorandum clause was introduced into policies for the pro-
tection of the insurer from liability for any partial loss what-
ever on certain *enumerated articles regarded as perishable in
their nature* and upon certain others none under a given rate
per cent. This was about 1749, and since then, in the growth
of commerce, the list of articles freed by the stipulation from
particular average has been enlarged so as to embrace many,
which, though they may not be *inherently perishable, are in
their nature peculiarly susceptible to damage* * * * The gen-
eral rule is firmly established in this Court that the insurers
are not liable on *memorandum articles,* except in case of
actual total loss and that there can be no actual total loss
where a cargo of such articles has arrived in whole or in
part, *in specie,* at the port of destination, but only when it
is physically destroyed, or its value extinguished by loss of
identity." The Court then refers to and discusses a number
of cases in support of this rule. In all of these cases the
insurance was upon *memorandum articles,* and not upon the
vessel as in the case before us and the cases to which we have
referred in support of the contention of the plaintiff. What
the Court said in *Washburn & Moen Mfg. Co.* v. *Reliance
Insurance Co.,* was intended, we think, to apply only to
insurance upon *memorandum articles.* The Court there said
in discussing, with approval, the case of *Marcardier* v.
*Chesapeake Ins. Co.,* 8 Cranch, 39, that some of the goods
insured in that case "were warranted free from average un-
less general, and damages were claimed for a constructive
total loss of these goods, but the claim was disallowed." After
stating the American rule that a damage of ordinary goods
exceeding 50% entitles the insured to recover for a con-
structive total loss, Mr. JUSTICE STORY, continued: "but
this rule has never been deemed to extend to a cargo consist-
ing wholly of *memorandum articles.* The legal effect of the
memorandum is to protect the underwriter from all partial
losses; and if a loss by deterioration, exceeding a moiety in
value, would authorize an abandonment, the great object of

the stipulation would be completely evaded.  It seems therefore to be the settled doctrine that nothing short of a total extinction, either physical or in value, of *memorandum articles* * * * would entitle the insured to turn the case into a total loss."  This, it seems is a recognition of the fact that a different rule applies (and the reason therefor is stated) between memorandum articles and other property that may be insured, such as the vessel itself as in this case.  That it was the intention of the Court to make this distinction, we think, is manifest from the statement found in the opinion that "in the United States the general rule is that a damage exceeding 50% justifies abandonment and recovery as for constructive total loss.  *Marcardier* v. *Chesapeake Ins. Co., supra; LeGuidon* (Paris, 1831), Chapter 7, Article 1; Chapter 5, Article 8.  But this principle is not applicable to *memorandum articles* in respect of which the exception of particular average excludes a constructive total loss."

The opinion makes no allusion to the Massachusetts cases here referred to, in support of the plaintiff's contention, in which the question of insurance of *memorandum articles* is not involved, but it does refer to and discuss the case of *Kettell* v. *Alliance Ins. Co.,* 10 Gray, 144, in which the cargo consisting of tin plates was insured "partial loss excepted."  In that case CHIEF JUSTICE SHAW ruled, for the Court, that the exception did not come under the memorandum clause.  He recognized a distinction between tin and brass goods liable to tarnish and memorandum articles liable to decay, and held that the natural construction of the exception was "that it leaves the insurer liable for all total losses; but it makes no distinction between absolute and constructive total losses; and in case of a constructive total loss which gives the assured a right to abandon and he exercises the right, it becomes a legal total loss, as if absolute in its nature," and the insurers were held liable for such constructive total loss under the 50% rule."  CHIEF JUSTICE FULLER, speaking for the Court in *Washburn & Moen, supra,* said in discussing the *Kettell case,* that: "If the contract in that

case had been in terms and arrangement the same as the contract in this, it does not follow that the same result would have been reached. But we must not be understood as accepting the views expressed in *Kettell's case,* great as is the weight attaching to the utterances of the distinguished Judge who delivered the opinion.

"We do not think the words 'partial loss excepted' had any other meaning as applied to tin plates than if applied to articles having an inherent tendency to decay. Tin plates may not be perishable in their nature in the sense of liability to corporeal destruction, but their original character as tin plates is perishable by reason of liability to corrosion and rust."

It was because of the distinction recognized in the *Kettell case* between tin and brass, and memorandum articles liable to decay, that the Court in the *Washburn & Moen case* refused to adopt the conclusion of CHIEF JUSTICE SHAW. It is clear, we think, that what was said in the Supreme Court decision was intended to apply only to cases where the property insured consisted of *memorandum articles* and this conclusion in our opinion is strengthened by the fact that if such distinction was not intended, some allusion would have been made to the *Heebner case* and others where the principle contended for by the appellees is laid down with great clearness and force.

In this case the insurance is upon the vessel and not upon memorandum articles, and is distinguishable from *Washburn & Moen case, supra.* The plaintiff was, in our opinion, entitled to recover under the policy in this case for a constructive total loss. We will therefore affirm the judgment of the Court below.

*Judgment affirmed, with costs to the appellee.*