Citizens Insurance Company of Missouri vs. Glasgow, Shaw & Larkin.

CITIZEN'S INSURANCE COMPANY OF MISSOURI vs. GLASGOW, SHAW & LARKIN.

This was an action upon a policy of Insurance. The policy was in the usual form of river policies; the perils insured against being those "*of rivers, fires, enemies, pirates, rovers, assailing thieves, and all other perils, losses, and misfortune which should come to the damage of said Steamboat according to the general laws of insurance.*"

Citizens Insurance Company of Missouri vs. Glasgow Shaw, & Larkin.

Among the other warranties or agreements was the following: "It was also agreed that the assurers are not liable for any partial loss or particular average, unless such loss or average should amount to ten per cent. on the value of said boat or vessel; *nor should they be held liable for the bursting of boilers or breaking of engines, unless occasioned by external violence.*

The letter of abandonment stated the cause to be that the boat had been nearly destroyed by the *late disaster,* and completely beyond repairs."

Held:

1. That although it might not be sufficient in the case of a *sea vessel,* to state the cause of the loss as "the late disaster," yet in the case of a steamboat, in which the boiler had burst, and many lives were lost, the Insurance Company having proceeded to act upon the notice, it is sufficient.

2. That the bursting of a boiler is a peril of the river.

3. The exception in the policy as to liability for bursting of boilers, or breaking of engine, to such as are caused by *external violence,* apples only to cases of partial, and not to cases of total loss.

4. The *external violence* intended by the policy, is violence external to the boat, and not merely external to the boiler.

5. A technical total loss is where the damage exceeds the moiety of the value of the thing insured. In estimating such a loss, on this policy, the boilers and engines are not to be taken into consideration.

## APPEAL from St. Louis Circuit Court.

H. S. Geyer, for Appellant.

H. R. Gamble, for Appellees.

To generalize the questions in this case, before examing the instructions in detail, I submit the following propositions:

1st. That upon reason and authority a loss to a steamboat occasioned by the bursting of a boiler, is a loss covered by the policy. 11th Ohio Reports, 147.

2nd. That the construction of the clause in the policy, exempting the insurers from liability for bursting of boilers and breaking of engines, is, that the insurers in a case of partial loss, are not liable for the damage to the boiler bursting, or the engine breaking, without external violence, but that they are liable for all damage to the parts of the boat, other than the boiler bursting or engine breaking. This will appear by the language and connexion of the clause. 1 Phillips 642. 2 Ibid. 192.

3d. That the defects or unsoundness of a boiler, or any other part

of the boat, which will discharge the insurer from liability for a loss, must be such as render her unfit for the purpose for which she is employed. Unseaworthiness is either the want of something that usually belongs to such a vessel, and which may be necessary for her safety, or such defect or unsoundness as renders her innavigable. 1 Philips 308, et. seq.; Taylor vs. Lowell, 3 Mass. Rep. 331; 11 Pick. 61. The question of seaworthiness applies to the beginning of the risk; 1st Philips 325; obligation to repair.

4th. That the insurers are not discharged by negligence or misconduct of the engineers or officers and crew, if the boat was provided with those who were competent in number and skill; 11 Peters 218; 11 Ohio 147; and the authorities referred to in the case of the St. Louis Insurance Company vs. Glasgow, Shaw & Larkin.

5th. That the abandonment in this case was sufficient if the facts warranted the insured in abandoning; 2d Philips 394, et seq., and was made in a reasonable time. Ibid 382, et seq.

6th. It was the right of the insured to abandon in case the loss amounted to fifty per cent, of the actual value of the boat at the time of the disaster; 2d Philips 271-273, et seq.

7th. In computing the loss, with a view to determine the right to abandon, the whole cost of restoring the boat to her former condition, including the expense of taking her to a port for repairs, is to be estimated; 2d Philips 285; 12th Peters 400; 2 Philips 115.

NAPTON, J., delivered the opinion of the court.

This case was originally an action of covenant, brought to recover upon a policy of insurance upon the steamboat Wilmington. By agreement, the pleadings were withdrawn, a declaration in assumpsit substituted, and the general issue pleaded.

The policy was in the usual form of river policies, the perils insured against being those " of rivers, fires, enemies, pirates, rovers, assailing thieves, and all other perils, losses and misfortunes, which should come to the damage of the said steamboat, according to the general laws of insurance." Among the other warranties or agreements, was the following : "It was also agreed that the assurers are not liable for any partial loss, or particular average, unless such loss or average should amount to ten per cent. on the value of said boat or vessel; *nor should they be held liable for the bursting of boilers, or the breaking of engines, unless occasioned by external violence.*"

The letter of abandonment was as follows :

"St. Louis, Nov. 26th, 1839. To the President, Directors, & Co. Citi-

Citizens Insurance Company of Missouri vs. Glasgow, Shaw & Larkin.

zens Insurance Company, St. Louis, Mo. Gent. The steamboat Wilmington having been nearly destroyed by a late disaster, and completely beyond repairs, you will please take notice that we abandon the said boat to your office, and look to you for indemnity on the portion of said boat insured at your office, under your marine policy, No. 1451. Very Respectfully, yours, GLASGOW, SHAW & LARKIN."

Upon the trial it appeared that the Wilmington was a single engine boat of three boilers, requiring two engineers.

A short time previous to the loss, it was discovered that the middle boiler of the boat had been injured by burning, and it was accordingly repaired at New Orleans, by cutting out the burnt part and putting in a new piece, a mode of repair usual, and believed by the witnesses to be sufficient, if done well. After the boiler had been repaired, the boat with a full cargo, proceeded to St. Louis, and when about 600 miles from St. Louis, at or near a place called Alexander's wood yard, the middle boiler burst, whilst the boat was under way, throwing the two outside boilers overboard, and doing much damage to the engine and hull, and cabin furniture. The boat was set on fire by the coals thrown out from the furnaces, and also leaked very badly, so that it was difficult to keep her from sinking. Whilst in this condition the steamboat St. Louis came alongside, bound from New Orleans to St. Louis, and by the assistance of her officers and crew, the fire on the Wilmington was extinguished, and the leaks stopped, and the cargo re-adjusted; by a contract between the masters of the two boats, the Wilmington with the cargo was towed to St. Louis for twelve hundred dollars.

When the Wilmington reached St. Louis, she had ceased to leak, the cargo was discharged, and the notice of abandonment given.

Evidence was given in relation to the cost of repairs, including engine and boilers, which it is not material to notice ; engineers were also examined in relation to the cause of the explosion, but no very satisfactory or definite opinion was expressed.

The defendants moved for the following instructions :

1st. The defendants are not liable for any loss or damage directly occasioned by the explosion or bursting of one or more boilers, or the breaking the engine of said boat, without any external violence.

2nd. The defendants are not liable for any loss or damage, solely and directly occasioned by the bursting of a boiler of said boat, without any external violence.

3rd. Unless the jury find from the evidence that at the time of the loss there were employed on the steamboat Wilmington, a competent number of skillful engineers, the plaintiffs are not entitled to recover.

4th. Unless the jury find from the evidence, that at the time of the loss, the boilers and *engine* of the Wilmington was sound and sufficient, the plaintiff is not entitled to recover, unless the defect, unsoundness or insufficiency, could not have been remedied with reasonable diligence before the loss, or unless it appears, to the satisfaction of the jury, that the loss was not occasioned by such defect, unsoundness or insufficiency.

5th. The defendants are not liable for any loss or damage, occasioned by the bursting of any boiler, or breaking of the engine of the Wilmington, if it appears to the satisfaction of the jury, that such bursting or breaking was caused by any defect or unsoundness of said boiler, or by the misconduct, unskillfulness, or gross negligence of any engineer of the boat, or person acting as such as the time.

6th. The defendants are not liable for any loss or damage directly occasioned by the gross negligence, or misconduct of the master, or any of the officers or crew of the steamboat Wilmington.

7th. Unless the jury find from the evidence, that the damage to the steamboat Wilmington, her tackle, apparel and furniture (exclusive of the engine and boilers) amounted to ten per cent, of the whole value of the boat, they ought to find for the defendants.

8th. If the jury find from the evidence, that there was no abandonment, in reasonable time, or that an insufficient abandonment was made and not accepted, the plaintiffs cannot recover as for a total loss, if the vessel was saved and might have been repaired.

9th. The defendants are not liable for any loss or damage to the engine or boilers of the steamboat Wilmington, occasioned by the bursting of a boiler, or breaking of the engine of said boat, without any external violence.

10th. The plaintiffs are not entitled to recover any damages for injuries done to the engine by the breaking thereof, or to any of the boilers, by the bursting of any one or more of them, if such bursting or breaking was not caused by external violence.

11th. The written notice of abandonment in this case, is not sufficient to entitle the plaintiffs to recover, as for a total loss.

12th. If it appears to the jury that any part of the property insured (other than the engine and boilers) was saved, the plaintiffs are not entitled to recover as for a total loss, unless the jury also find that the plaintiffs within reasonable time, after notice of the loss, made an abandonment to the defendants, and that the loss or damage to the property insured (other than to the engine and boilers) exceeded fifty per centum of the value thereof.

13th. The notice of abandonment given by the plaintiffs to the defendants, is not sufficient, unless at the time of giving such notice, the plaintiffs made known to the defendants the grounds and reasons of the abandonment, or unless the abandonment was accepted by the defendants.

14th. An abandonment of the property saved, including the engine and boilers, with a claim of indemnity for the whole loss, is not such as the defendants were bound to accept, and if not accepted does not entitle the plaintiffs to recover, as for a total loss, even though the damage to the property, exclusive of engine and boilers, exceeded one-half the value.

15th. Unless the property covered by the policy was damaged by a peril insured against to more than one-half the value of such property, as fixed by the policy, the loss is partial only.

16th. It being admitted by the parties, that the loss and damage in the declaration mentioned, were occasioned by the bursting of a boiler, and breaking of the engine, without external violence, the value of the engine and boilers, and the damage thereto, are to be excluded in all valuations of the property insured, and ascertainment of loss, as if they had not been included in the policy.

17th. If under the foregoing instructions, the jury find a total loss, the loss of the plaintiff will be the sum insured, deducting therefrom three-sixteenths of the value of the engine and boilers, at the date of the policy, and three-sixteenths of the value of all the property saved, except engine and boilers.

18th. If the jury, under the instructions, find the loss to have been partial only, the loss of the plaintiff will be three-sixteenths of the costs of repairs (including the engine and boilers,) and deducting one-third of the costs of repairs.

19th. The defendants are entitled to an abatement of two and a half per cent. on the amount of loss sustained by the plaintiffs.

20th. If the sale of the property saved was made by the plaintiffs, or their order, without the consent of the defendants, such sale is no evidence against the defendants, of the value of the property sold: the last two of which instructions the court gave, but added thereto the following instruction:

21st. A sale made without collusion in the ordinary mode in which such sales are made, is evidence to be weighed by the jury, but is not conclusive against the defendants.

To the giving of which instructions, so added, the defendants excepted.

The defendants then moved the court to instruct the jury as follows :

22nd. If the jury find from the evidence, that the loss was occasioned by the bursting of a boiler of the steamboat Wilmington, and that said boiler was at the time unsound, defective, or insufficient, the plaintiffs are not entitled to recover, unless it appears to the satifaction of the jury, that such defect, unsoundness or insufficiency, could not have been remedied before the loss, by the use of reasonable diligence on the part of the assured and their agents.

23rd. If the jury find from the evidence, that any part of the property, insured against the perils by which the loss was occasioned, was saved and might have been repaired, and that the value of such property, when repaired, would be equal to double the cost of repairs, the loss was partial only, and could not, by abandonment, be converted into a total loss, unless such abandonment was excepted.

The verdict and judgment were against the defendant.

One of the errors assigned in this case, is the insufficiency of the notice of abandonment. It is not contended by the plaintiffs in error, that this need be in any particular form,, but it is insisted that this notice wants an essential requisite, to-wit, the assignment of a sufficient cause for the abandonment.

The notice of abandonment must be absolute, and must assign the true cause, and a sufficient one to authorize the abandonment. 2d Phil. Ins. 394-5. In a case of Marine Insurance, (Hazard vs. N. E. Marine Insurance Co., (1st Sumner 221,) Judge Story declared it to be his understanding of the law, that in an abandonment, the cause of the loss must be stated, so that the underwriter may know whether it is a loss by peril within the policy. No objection to the notice in the present case, can be urged, for not sufficiently indicating the plaintiffs' intention to make an absolute abandonment. The language in this respect is clear and unequivocal. The cause of the abandonment is also very distinctly stated to be the destruction of the Wilmington *"by the late disaster."* Had the Wilmington been a sea vessel, such an expression might afford but little information to the underwriters, as to the causes of the disaster, and no doubt would have been entertained of the insufficiency of the notice. Under the circumstances of this case, however, we might well hesitate in applying the strict rule laid down by Judge Story. The Wilmington was a steam vessel navigating the waters of the Mississsppi ; by the explosion of a boiler it was partially destroyed, and many lives were lost; it was towed up to the port of St. Louis, where the office of this Insurance Company was kept; after which, notice of abandonment was given, and immediately upon receiv-

ing it, the company caused a thorough investigation into the condition of the boat. Might we not well presume, that under such circumstances, a reference to "*the late disaster*" fully apprised the company of the nature and cause of the loss? The reason of the law ceasing, must we still insist on its observance?

Passing by this point to others of more consequence, we proceed to consider the proper construction of the policy, about which the controversy has mainly arisen.

The first question which arises upon the policy, is whether a loss occasioned by the explosion of a boiler, is within the enumerated perils. The form of the policy is the same which has been used in Marine Policies, and the perils enumerated are the same. They are "of the rivers, fires, enemies, pirates, rovers, assailing thieves, and all other perils, losses and misfortunes, which should come to the damage of the said steamboat Wilmington, according to the general laws of insurance." It is remarkable, considering the numerous losses arising from this cause in the navigation of the western waters, that but one case can be found in which this question has been decided. That is the case of Perrin's Adm'r vs. the Protection Insurance Company, 11 Ohio Rep. 147. The supreme court of Ohio, in that case were of opinion, that the policy covered a loss occasioned by explosion. The court seemed to consider that this was a peril incident to the navigation of a river by steam vessels, as much so as a loss by wind would be a peril of the sea, to which vessels propelled by that element are liable. It is no answer to this view of the subject, to say that a peril by steam is not peculiar to the water, but may happen on land as well as at sea, for the same may be said in relation to the dangers arising from the violence of the winds. An injury to the motive power of a sea vessel by inevitable accident, is admitted to be within the enumerated perils of a marine policy; for the same reason, an injury to the motive power of a steam vessel arising from inevitable accident, is within the perils of the river incident to such vessels. If steam were a power entirely within the control of man, the conclusion would be different. But I apprehend that whatever natural philosophers may think of this, the elements which combine to create the power of steam, are as entirely within the reach of accident, and are no more subject to fixed laws than the elements which propel the ship at sea. Whatever may be the theories on either subject, universal experience is that no human skill can entirely guard against accidents, either in the one case or the other. We think, therefore, that the doctrine of the supreme court of Ohio is reasonable and right.

Assuming then that the explosion of the boiler is a peril within the policy, what construction shall we give to that clause which exempts the underwriters from responsibility " for the bursting of boilers or the breaking of engines, unless occasioned by external violence ?" Was this clause intended to constitute a limitation of the risks enumerated ? Is it a fair construction of the policy, that the underwriters by this clause intended to limit their responsibility for losses by explosion, to such cases of explosion only as might be caused by external violence.

It must be admitted that this construction of the clause is the most obvious one, but upon a careful examination of the whole policy, taking it altogether, we are forced to the conclusion, that it is not the correct one.

If the underwriters intended to their responsibility for the peril of explosion, to such peril when occasioned by external violence, it would have been most material to have placed such limitation in the same portion of the policy in which those perils are enumerated. It is in this part of the instrument that the assured would look to see what were the perils against which he was insured. The clause in relation to the breaking of engines and bursting of boilers, is found among the enumeration of partial losses. Immediately preceeding it, is the statement that the underwriters are not responsible for partial losses, unless they amount to ten per cent. Immediately following is the clause which exempts anchors and cables from the policy, unless lost by stress of weather. The maxim *"noscitur a sociis"* then applies.

Moreover, if this clause had been designed as a limitation of the perils mentioned in the policy, why should the *breakage of an engine* be connected with the bursting of a boiler, so as to exempt the company from responsibility in either case, whether the loss was total or partial ? The bursting of a boiler might in many instances produce a total lass, and would, I apprehend, in most cases produce a technical total loss ; whereas the breaking of an engine from mere internal defects or mismanagement, could never produce a total loss. The breaking of an engine *per se* is not a loss insured against, it must be occasioned by some of the perils insured against to bring it within the policy. The explosion of a boiler is a peril insured against. To say then that the explosion of a boiler unless produced by external violence shall not make the underwriters liable for the consequences of that explosion, though a total destruction of the boat is produced, is well enough, if such were the intent and understanding of the parties. But to say further that the breaking of an engine, unless occasioned by external violence, shall not be paid for in a case of total or partial loss, seems to have no connection whatever with the previous propo-

sition, if we understand that proposition to be designed as a limitation upon the risks specified in the general clause, usually appropriated to that subject.

We understand then the exemption of the boilers and engine, as limited in cases of partial loss. The clause would then read " the assurers are not liable for any partial loss or particular average, unless such loss or average shall amount to ten per cent., nor in case of partial losses shall they be liable for the bursting of boilers or the breaking of engines, unless occasioned by external violence." Where there is a total loss in a valued policy, all questions in relation to cables, anchors, partial losses, &c., are excluded. The assured look to their policy, and enquire only whether the loss has been occasioned by a peril insured against. Upon this construction, if the boat were totally destroyed, the assurers would have been liable to the amount insured, including boilers and engine.

A difficulty however arises under this construction, in ascertaining a technical total loss, so as to authorize an abandonment. A technical total loss, is where the damage sustained exceeds the moiety of the value of the thing insured. The question then arises, whether in estimating the amount of loss, the engine and boilers must be included in the estimate. It has been before observed that the underwriters are not responsible for a partial loss, occasioned by the breaking of engines or bursting of boilers; and therefore, if in ascertaining a technical total loss, for the purpose of abandonment, the value of the engine and boilers is taken into the estimate, the underwriters are thereby made indirectly responsible for a partial loss, against which their contract protected them. The engine and boilers then, where they are injured by any cause other than external violence, must be excluded from the estimate. It is like the case of a policy in which there are memorandum articles, that is a portion of a cargo, for any deterioration of which the underwriters are not responsible, except in the event of their total destruction. In ascertaining whether a total technical loss can be claimed, all injury to the memorandum articles is excluded from the estimate. Marcadier vs. Chesapeake Insurance Company, 8 Cranch, 39.

It is contended however, that the exploded boiler alone is to be exempted from the policy, and that the other two boilers which were thrown overboard by the explosion, and the engine which was broken, are to be included in the estimate of loss. This is based upon the idea that the terms *"external violence"* used in the policy, mean a violence external to the engine which breaks, or the boiler which bursts. This

interpretation of the words "external violence" seems rather too refined; for if this be their true import, might there not be some plausible ground for the idea, that the bursting of a boiler always is produced, at least remotely, by some external violence, such as the intensity of heat in the furnace? We suppose the external violence mentioned, means a violence *external to the boat,* such as striking a log, rock or sandbar, or collision with another boat. In this case the injury to the boilers and engine was not, as it is admitted, occasioned by a violence external to the boat, and therefore they should be excluded from the computation of a total technical loss.

We do not advert particularly to the instructions in this case, as we believe most of them involve the same questions which we have already considered. Those which relate to the question of negligence, have been considered and determined by this court in the case of the St. Louis Insurance company vs. Glasgow, Shaw & Larkin, 8 Mo. Rep. 713.

In relation to the propriety of charging the Insurance Company with the expense of bringing the boat up to St. Louis, we see no objection to the instruction of the circuit court on this point. If the cost of towing the boat were increased by the fact of her having a full cargo aboard, the underwriters were not responsible for such increased expense. We do not recollect that there was any evidence to show how this was, if there were any it would be proper for the jury to make such discrimination.

The other judges concurring, the judgment is reversed, and the cause remanded.