HENRY M. STRONG *et al. v.* THE SUN MUTUAL INSURANCE COMPANY.

Where, by the terms of the contract of insurance upon the body, tackle, apparel, &c., of a propeller, the insurers are "not to be liable *for* the bursting of the boilers," the language is to be understood that they are not to be liable for damage resulting to the vessel or otherwise, "on account of" the bursting of the boilers.

"For," construed to mean, "on account of," "by reason of," "because of," &c.

That which was excepted from the risk by the insurers, by the use of such language, was any damage resulting as a consequence of the bursting of the boilers.

APPEAL by the plaintiffs from a judgment of the Superior Court of Buffalo, rendered in favor of the defendant, on a demurrer to the complaint. The action was upon a time policy of insurance, upon the body, tackle, apparel and other furniture of the propeller Challenge, the property of the plaintiffs, valued at $28,000, commencing at the date of the policy, the 22d April, 1853, and ending on the 30th November following, for navigation on the lakes and tributaries. The amount insured by the defendant was $12,000.

The complaint contained the following clauses: "And the said plaintiffs in fact further say, that it was further provided in and by the said policy of insurance, among other things, that the said defendant was not to be liable for any derangement or breakage of the machinery, or bursting of the boilers, unless occasioned by stranding; but if the said propeller should take fire, or any parts of the machinery or boilers be damaged thereby, the said defendant, as in and by the said policy provided, was to be liable therefor. And the said plaintiffs further say, that it was also provided in and by the said policy, among other things, that the said defendant was not to be liable for fuel, wages and provisions, nor for any expenses of any delay, consequent upon repairs of any kind. The adventures and perils insured against by the policy, according to the statement of the complaint, were "of the seas, men-of-war, fires, enemies, pirates, rovers,

thieves, jettisons, letters of mart and countermart, surprisals, taking at sea, arrests, restraints and detainments of all kings, princes or people, &c., and all other perils, losses and misfortunes," &c.

The complaint contained the following averment: "And the said plaintiffs further state that the said propeller, at the date of the said policy, was in safety, and was in every respect light, staunch, strong, well equipped and provided, and in a perfectly seaworthy condition; and that thereafter and heretofore, and on or about the 22d day of June, 1853, while she was proceeding on a voyage to Chicago, on Lake Michigan, the boilers thereof burst, and the said body, tackle, apparel and other furniture of the said propeller, and the boilers, were blown to pieces and sank and became destroyed *by such bursting, and thereby and not otherwise then and there became and was wholly and totally lost to them, the said plaintiffs;* and thereafter and heretofore the said propeller was abandoned by the owners thereof to the said defendant." The complaint contained the other usual averments.

The ground of demurrer was that the complaint did not state facts sufficient to constitute a cause of action; for the reason that by the terms of the policy, as set forth, the defendant was not to be liable for any injuries or loss occasioned by the bursting of the boilers of the said propeller, &c.

*George B. Hibbard,* for the appellants.

*E. C. Sprague,* for the respondent.

DENIO, Ch. J.    The complaint was apparently drawn with a view to present the question of construction arising upon the exception contained in the policy. As the solution of that question depends upon the particular language used, we must assume that the averments contain verbally accurate extracts from the contract. The position of the defendant, upon that language, is that the insurers were not to be liable for the consequences to the vessel and its equipment and furniture, resulting from the bursting of the boilers; while the

plaintiffs claim that the exemption from liability is limited to damage to the boiler alone. Upon questions of this kind the first resort is to the terms used. It is not said in express language that the defendant is not to be liable for any loss *occasioned* by the explosion of the boiler, but the expression is more brief and perhaps more indefinite. The company "is not to be liable—*for* bursting of the boilers." It is unquestionably loss or damage of some kind and to some subject, to which the liability is declared not to extend. The kind of damage was that which would naturally or probably result from such an accident. Such an occurrence would necessarily injure and would probably destroy the boiler itself, but it would also be likely to injure the vessel, and might, as it did in this case, sink and destroy it. The meaning of the sentence depends much on the force of the word *for.* The defendant was not to be liable *for* bursting the boilers. In my opinion it is to be understood in the sense of "on account of," "by reason of," or "because of." The word is familiarly used in such a sense; and these are among its established definitions. A man is said to be liable to pay damages for the commission of a trespass, or to be imprisoned for stealing another's property. What the defendant was not to be liable for by this clause were the consequences of the bursting of the boilers. The plaintiffs took the risk of these consequences upon themselves. The nature and extent of the consequences which were embraced in the scope of the provision, is another question. They were something which the insurers would be liable for, or which it was supposed they would be liable for, but for the special provision. The breaking to pieces and sinking of a vessel which was seaworthy at the commencement of the voyage, by a peril insured against, is a thing for which an insurer is of course liable, and the explosion of the boilers of a steam vessel, without the fault of the assured, is, upon the concession of the counsel on both sides, a peril embraced in this policy. The plaintiffs' claim to recover is based wholly upon that position. It has been so held in several cases in this country, and I am not aware that it has ever been contra-

dicted. (9 Mo., 411; 11 Ohio, 147; *The Western Ins. Co.* v. *Coffen*, 32 Penn., 357.)

If, therefore, the defendant contracted to be exempt from liability for damages consequent upon the bursting of the boilers, the reasonable interpretation to be given to the contract is, that it contemplated the injury to the ship as well as to the boilers themselves. That, we know, was a result quite likely to follow from such an accident, and it was one for which the insurers would be liable under the general terms of the policy. The intention of the clause under consideration, seems to have been to qualify the effect of the general provisions of the contract.

The connection in which this particular exception is found strengthens the defendant's position. The whole clause is, that the insurers are "not to be liable for any derangement, or breakage of the machinery, or bursting of the boilers, unless occasioned by stranding." Now, the *derangement* of the machinery might be very fatal to the vessel, as it might leave her exposed to the winds and waves, without aid from any propelling power. Every one knows that in the absence of means to keep a ship on its course, it is liable to broach to and founder, if there be at the time a gale of wind. The absolute injury to the machinery itself, from a derangement of its parts, would be greater or less, according to the circumstances; but of itself, and unconnected with its consequences to the ship, it would not ordinarily be of sufficient moment to form the subject of a distinct exception in a contract of insurance. The breaking of a piston-rod of a steam vessel having a single engine, during a storm, where there was no duplicate on board, would, under probable circumstances, be fatal to the ship; but, upon the plaintiffs' construction, the insurers would be responsible for the loss except the expense of replacing the broken rod, though they had contracted that they would not be liable for damages on account of the breaking of machinery.

The whole sentence is qualified by the words, "unless occasioned by stranding." Stranding is understood to be the striking of a vessel upon a rock, bank, reef or the like.

A probable concomitant of such an accident is the derange-
ment or breaking of the machinery, and bursting of the
boilers. When such an occurrence happens, it is not attribu-
table so much to the inherent nature of such arrangements
as steam engines as to the perils of navigation which are
common to all methods of propulsion on water. If we sup-
pose the intention of the parties to this policy to have been
to exempt the insurers from that class of hazards which are
peculiar to the use of steam as a propelling power, and to
subject them to the other ordinary perils, the office of the
words respecting stranding will be quite apparent. As
stranding was a thing which might happen to any vessel,
whatever its moving force was, it would be reasonable for
the insurers to agree to indemnify the owner for all the con-
sequences of such an event, to any portion of the vessel or
her machinery or furniture, and it would not conflict with
the idea that the assured took upon themselves the class of
risks which are peculiarly connected with the generation and
use of steam as a propelling agent. The sentence under con-
sideration proceeds, "but if the said propeller should take
fire, or any part of the machinery or boilers be damaged
thereby, the said defendant is to be liable therefor." This
may be considered either as a qualification of the previous
language, exempting the insurers from the consequences of
the bursting of the boilers; or, a provision introduced for
greater caution to preclude a construction by which no
indemnity was to be allowed the owner for injuries to the
boilers or machinery in case of a fire originating otherwise
than by the explosion of the boilers, but commencing in
parts of the vessel exterior to them. On the first supposi-
tion, the effect of the language would be that, as to one of
the possible consequences of an explosion, namely, damage
by *fire* to the boilers or machinery, the exemption from lia-
bility should not apply. But as I can see no reasonable
motive for such a qualifying provision, and as it would be
hostile to what I conceive to be the policy upon which the
exception was introduced, I reject it. I think the provision
points to the case of a fire occurring in the vessel, exterior to

the boilers, and not occasioned by their bursting, and that it was intended to exclude any inference that the former language would operate to deny to the owners an indemnity for injury to the boilers or machinery from such a cause. Considered in this light, it would appear to have been introduced almost from excessive caution. Still, it is conceivable that the parties may have had in their minds the case of a fire preceding and not originating in an explosion, but ultimately causing a bursting of the boilers and their destruction from such bursting. Thus understood, the provision would have a reasonable operation and would not militate against the interpretation I have given to the prior language.

The plaintiffs' construction, as I have remarked, would confine the exemption from liability on account of the bursting of boilers to the injury to the boilers themselves; and so with the derangement or breaking of machinery. Had this been the intention, it would have been more natural to declare that the boilers and machinery were not covered by the policy except as related to injuries not connected with their operation. But I am more impressed with the idea that the intention of the contract was to except from the indemnity contracted for, the injuries which should result from the peculiarly hazardous method of propelling the vessel. The use of steam introduces a class of risks which were unknown when the terms of the common policy of insurance was settled. It is not the question whether steam vessels are not, upon the whole, safer than those which are moved by the wind and regulated by sails. However that may be, the former are exposed to destruction from causes wholly unknown to the ancient mode of navigation, though they may be more secure against another class of hazards. It is of course competent for parties to make a contract of insurance which shall exclude the peculiar hazards which beset steam vessels from the indemnity provided for. They may also so frame their contract as only to exempt from the promised indemnity the instruments provided for generating and applying the steam. My conclusion is, that the contract we are dealing with is of the former character, and that it embraces

in the scope of the exception the consequences arising from accidents to which this method of navigation is exposed, as well as the instrument used in carrying it on.

The cases in this court and in the Superior Court of New York upon fire policies, though not precisely in point, sustain, to some extent, the conclusion to which I have arrived. (*St. John* v. *The Am. Mut. Fire and Marine Co.*, 1 Kern., 516 ; *Haywood* v. *The Sea and Land Fire and Life Ins. Co.*, 7 Bosw., 385.) The general question in both these cases was, whether an exception excluding liability from explosions of steam boilers embraced the effects of fires kindled by means of the explosion, and it was held that it did. The fires were not the immediate effect of the explosion, nor were the necessary and inevitable result of such accident, but as they were natural and probable consequences, they were held to be embraced within the exception. In both cases, the language was more precise than in the case under consideration, for the words in the first case were, that the insurers should not be liable for any *loss occasioned* by the explosion of a steam boiler, and in the case in the Superior Court it was, that they would not be liable for any loss or damage which might happen by any explosion. If I am right in supposing that the word *for*, in the present policy, has the force which I have attached to it, the cases cited are substantially parallel.

Much reliance is placed by the plaintiffs' counsel upon the case of *The Western Ins. Co.* v. *Cropper*, reported in 32 Penn. (8 Casey, 351), where, upon an exception in a policy in many respects like the one under consideration, and the vessel was lost by a breakage of the steam apparatus, it was held that the insurers were liable for a total loss. The accident was the bursting of the feed cock and the breaking of a bolt of the stuffing box, which caused the steamer to leak and obliged the master to run her ashore, when she was wrecked and became a total loss. The primary words of exception were substantially identical with those in the present case, but certain language was added which is not in the policy before us. As the court read it—correcting a sup-

posed error in penning it—it was as follows : " or from the effects of fire from any cause connected with the operation of, or the repairs of, an engine or boiler, unless the damage be occasioned, or the repairs be rendered necessary, by the stranding or sinking of the vessel after her engines and boilers shall have been put in successful operation." A clause followed this, providing that the insurers should not be liable for fuel, wages, provisions or delay "consequent upon repairs to the engine or boilers of any kind, or repairs to the hull, if such repairs are rendered necessary by breakage or derangement of the machinery or bursting of the boiler." The argument of the opinion is, in substance, that inasmuch as the contract, independently of the principal clause, expressly provides against liability from fire and from delay occasioned by the breaking or bursting of the steam apparatus, the principal excepting clause could not have looked to the general consequences of such breaking or bursting, for otherwise it would have been unnecessary to enumerate the losses by fire and delay arising from the bursting or breakage, as those would have been already embraced in the provision that the insurers "should not be liable for any breakage or derangement of the engine or bursting of the boiler or any of the parts thereof," which was the language of the principal exception. In other words, that having provided in express terms for certain consequential losses, the general language was not to be construed as embracing any other consequential damage. Hence it was held, that where fire or delay had not resulted from the bursting or breaking, the indemnity was to be limited to a compensation for restoring the broken and deranged machinery, though the entire vessel was lost by the breakage. It is enough to say of this case that it was adjudged wholly upon the force of language not contained in the contract before us, and that no opinion is there given upon the interpretation of the exception if it had not been accompanied by the additional provisions. There is a provision in the present policy exempting the insurers from damages for delay consequent upon repairs of any kind, but this does not appear to me

to bear·upon the defendant's liability under the principal exception.

My conclusion is, that the judgment of the Superior Court of Buffalo was right, and that it ought to be affirmed.

INGRAHAM, J.    The plaintiffs' complaint against the defendants avers that a propeller, belonging to them, on Lake Michigan, was proceeding on her voyage when the boiler burst, and the body, tackle, apparel and furniture of the propeller and the boilers were blown to pieces and sunk and destroyed.    The propeller was insured by the defendants under the usual policy, with a clause therein providing that the defendants were not to be liable for any derangement or breakage of the machinery, or bursting of the boilers, unless occasioned by stranding, but if the propeller took fire or the machinery or boilers should be damaged thereby, the said defendants were to be liable therefor.

The defendants demurred to the complaint, and the question which arose thereon depends upon the construction of the exception above stated as to the bursting of the boiler. ·It must be conceded that the damage to the vessel was occasioned by the bursting of the boiler, and that there is nothing to show that any other cause than a defective boiler led to the explosion.    No cause whatever for the explosion is stated in the complaint, nor are any circumstances alleged to take the case out of the exception.

The ordinary use of language and the understanding of the words used, looking at them in the common sense mode of interpretation, would both lead to the conclusion that the defendants intended by this provision in the policy to avoid the risk which might arise from the bursting of the boilers or the derangement or breakage of the machinery.    They were not to be liable for either, except it was occasioned by stranding.    In such a case the loss was assumed by the defendants for the very obvious· reason that the bursting was not the cause of the loss, but a consequence of what would probably have caused it, whether the boiler burst or not.

Whether or not the vessel was seaworthy, has nothing to do with this exception. It does not assume the risk if seaworthy, or seek to avoid it if otherwise; but the exception is general and applies equally, whether the vessel was sound or not.

The plaintiffs contend that the defendants are liable for the loss in all respects except for the damage to the boiler itself.

It is not necessary to inquire, in this case, whether the defendants would have been liable for the loss if, after the bursting of the boiler, the vessel had attempted to get in port by the use of sails, or otherwise, and had been then lost. The loss then would have been consequential and not direct. In this case the bursting of the boiler is alleged to be the direct and immediate cause of the loss; the averment being that by such bursting the body, &c., of the propeller was blown to pieces and sunk. The cases cited by the appellants as favoring the liability of the defendants, were all cases in which the loss was not the direct result of the injury attempted to be guarded against by the exception, or where the wording of the exception was such as to relieve the question of any doubt, with the exception of *The Western Insurance Co.* v. *Cropper* (32 Penn., 351). Even in this case the bursting of the boiler was not the immediate and direct cause of the loss. The court say they do not consider the exception such "as to exempt from the obligation to pay for a total loss, though the loss could be *traced back* to the breakage of the machinery as its first cause." From the statement of the case it is apparent the vessel was not destroyed by the bursting, but such destruction followed from causes originating perhaps in the destruction of the boiler, but not by the bursting itself. I cannot, however, adopt the conclusion that that case is controlling as applied to the present one; on the contrary it seems to me to be the very liability which the company intended to guard against, by excepting a liability for the bursting of the boiler.

I see no difficulty in construing the subsequent part of this clause in regard to fire so as not to conflict with the interpretation given to the exception by the court below. That pro-

vided for liability if the propeller should take fire, and that fire should cause the destruction of the machinery or boiler, they would bear the loss. The very statement of such a liability is a clear expression of intent not to bear the loss where it arises in the first instance from the bursting of the boiler.

It seems to me to be clear that the exception in the policy was intended to guard against the bursting of the boiler, and all injury directly produced by such explosion.

The judgment of the court below should be affirmed.

All the judges concurring,

Judgment affirmed.