IDA L. QUACKENBOSS ET AL. V. INSURANCE COMPANY OF NORTH AMERICA.

### [50 South. 444.]

1. MARINE INSURANCE.  *External violence.  Contract.  Construction.*

   Where the terms of a marine insurance policy exempt the insurer from liability for losses occurring from the bursting of the boilers unless caused by unavoidable external violence, the violence meant is that which is external to the vessel and not merely to the boilers.

2. EVIDENCE.  *Witnesses.  Experts.  Opinions.  When immaterial.*

   The opinion of an expert is immaterial in the absence of all evidence of which to predicate it.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

Mrs. Quackenboss, administratrix, and others, appellants, were plaintiffs in the court below; the Insurance Company of North America, of Philadelphia, appellee, was defendant there. From a judgment, predicated of a peremptory instruction, in defendant's favor the plaintiffs appealed to the supreme court. The opinion of the court states the facts.

*Smith, Hirsh & Landau,* and *Pat. Henry,* for appellants.

Contracts of insurance, like all other contracts, must be construed according to the intention of the policies as manifested by the words used, and according to their ordinary signification. *Insurance Co. v. Ingram,* 34 Miss. 215.   Contracts of insurance should not be subject to any critical or technical interpretation, but should be liberally construed in favor of the insured, whenever there is an ambiguity in the language used.   Cooley's Briefs on the Law of Insurance, 623; *Lowenthal v. Insurance Co.,* 112 Ala. 108, 33 L. R. A. 258; *Liverpool, etc., Insurance*

*Co. v. Van Os,* 63 Miss. 431; *Boyd v. Insurance Co.,* 75 Miss. 47. .

The engineer, who had qualified as an expert, should have been allowed, in giving his testimony, to answer the question as to what, in his opinion, under an undisputed condition of precedent facts, produced the explosion. The action of the court below in sustaining the appellee's objection to such question constituted error. 5 Encyc. E., 572; *Webster Mfg. Co. v. Mulvany,* 106 Ill. 311; *Sioux City, etc., R. Co. v. Finlayson,* 29 Neb. 860; *Camp, etc., Co. v. Ballou,* 71 Ill. 417; *Virginia Car. Chem Co. v. Kirben,* 35 S. E. 745.

The expression "avoidable external violence" should be given a liberal construction.

There is not a line, word or syllable in the policy which says or even intimates that the cause of the explosion must be external to the boat. There is no ambiguity. The language is *"external violence,"* and not *violence external to the boat,* and therefore when it is shown that the violence was external to the boiler the "violence" is within the exact precise terms of the policy, and if it is sought to be shown that the violence must be external to the boat, then something is added to the policy which it did not originally contain, and the ordinary meaning of the word *external* is changed to a *refined,* technical, strained meaning, that the word does not even imply.

When the insured read his policy he had a right to believe, that if the boiler exploded for any reason external to the boiler, the insurance company had assumed the responsibility for the loss occasioned thereby. No other construction can reasonably be put upon the policy, even if it were not to be liberally construed in favor of the insured; but when the construction must be favorable to the insured, then the language cannot be tortured to make it mean something which would be unfavorable to the insured. Suppose the United States government would have chartered this steamboat to transfer munitions of war and troops from one port to another, and a loaded cannon would have

unfortunately remained on the deck of this steamboat, and in such position that a shot from the cannon would have reached the boiler, and, by some misfortune, the cannon would have been fired and the shot, therefore, would have struck the boiler and caused it to explode, how, under any *ordinary meaning* of this language would this defendant escape liability? Many instances could be offered to show that a boiler can burst or explode from causes or violence external to the boiler, and, this being true, the cause presented a question for the jury to determine and not for the court.

What was the external cause or violence that produced the explosion? Dynamite might have been put under the boiler purposely to cause an explosion; the coal might have been full of dynamite or gunpowder; and other causes external to the boiler which could produce an explosion, will readily suggest themselves to the minds of the court. We, therefore. maintain that if we can show that this boiler was injured, or the explosion produced by some cause or violence external to the *boiler,* the insurance company is liable.

The only case upholding the contention of appellee seems to be *Citizens' Insurance Company v. Glasgow,* 9 Mo. 411, where the Missouri court said that the terms "external violence" used in the policy mean a violence external to the engines which break or to the boiler which bursts. But this interpretation of the terms is rather too far-fetched.

*McLaurin, Armistead & Brien,* for appellee.

"Unavoidable external violence" has a meaning just as distinct as the word "collision," or the word "stranding." These words have received judicial interpretation and what is meant by unavoidable external violence has been defined by the courts, and this definition accepted by the policy writers in using the language in the careful preparation of their policies. In "Words and Phrases" unavoidable external violence is defined, and the case of *Citizens Ins. Co. v. Glasgow,* 9 Mo. 411, is given

as authority for the definition of this phrase. This case held that where the provision was made that the insurer should not be liable for *"any damage"* or loss arising from the bursting of boilers . . . unless from unavoidable external cause or from consequences resulting therefrom, it was held that it was immaterial whether the loss was partial or total, and that the exception of losses occurring by the bursting of boilers, unless occasioned by *external violence* (the very thing in the policy now before the court) *refers to violence external to the boat, and not merely external to the boiler.* See Cooley's Briefs, vol. 3, p. 2913, where he gives the definition of the word "collision" as understood in marine insurance, and discusses the case of *Citizens' Insurance Co. v. Glasgow, supra.* The Missouri court in the *Glasgow case, supra,* considered the words "unavoidable external violence" to mean *unavoidable violence external to the boat,* a violence like *"striking a rock"* or *"having a collision"* or *"striking a sand-bar."* This was the meaning of a boiler explosion occurring from "unavoidable external violence;" from some sudden jar received by the boat, external to the boat that would cause an explosion. See also *Strong v. Sun Mutual Insurance Co.,* 31 N. Y. 103; *Cline v. Western Assurance Co.,* 101 Va. 496, 44 S. E. 700.

In answer to the contention by appellant that the court below erred in refusing to allow the engineer to give his opinion as an expert, we merely say that no witness, agent or otherwise, of the company, had a right to give his opinion of how the explosion occurred; that *by the terms of the contract,* it was made a distinct *question of fact* and the plaintiffs must be able *to prove the facts* which constitute "unavoidable external violence" before they could show any liability on the part of the company, under the evidence in this case.

*Stephens, Lincoln & Stephens,* and *Charles H. Stephens,* on the same side.

It seems to be contended by appellants that the words, "un-

avoidable external violence," as used in the policy mean violence external to the boiler and not external to the boat. It seems to us that this discussion is more or less beside the point. The principles of construction which should guide the court in interpreting the policy, are pretty well settled. It is true we claim that the words "unavoidable external violence" in the policy, mean violence external to the boat, but we wish to say at the outset that we do not consider this a crucial question, for the reason that plaintiffs failed to show that the explosion was caused by external violence of any kind whatsoever, either external to the boat or external to the boiler. There was no evidence that the explosion was other than the ordinary explosion of the boiler, caused by the pressure of the steam within. Under these circumstances it is not very important to determine the exact significance of the words "external violence." If they mean violence external to the boat, then the plaintiffs admit that they have no case. They did not pretend to show or have any evidence to show that the boat met with any accident or external violence which caused the explosion. It was not moving but at a landing at the time.

What did the parties, or, if you please, the company, mean by the words "unavoidable external violence?" One naturally thinks of collisions or such accidents as stranding or grounding; which might naturally cause the derangement or breaking of engines or machinery, or even the bursting of boilers. It is difficult to imagine any other sort of unavoidable violence which would have this result. The suggestion of counsel for appellants that dynamite might have been under the boiler, or that the coal might have been full of dynamite or gunpowder, is so far-fetched and unlikely that no one can suppose that it was the intention of the parties to guard against accidents of that kind.

That the construction of the policy by the court below is correct is shown by the following cases: *Citizens' Insurance Co. v. Glasgow*, 9 Mo. 411; *Strong v. Sun Mutual Insurance Co.*, 31 N. Y. 103, 88 Am. Dec. 242. Appellants cannot predicate

error of the exclusion of any part of the testimony of the engineer. Under the facts the opinion of the engineer as an expert was immaterial. *Townshend v. Bluett,* 5 How. 514; *Cole v. Harmon,* 8 Smed. & M. 562; *Withers v. Bullock,* 53 Miss. 539.

Whether or not an alleged expert has sufficient scientific knowledge to answer a question largely hypothetical and technical is a matter largely within the discretion of the trial judge, and his decision will not ordinarily be disturbed unless there has been some abuse of discretion. *Stillwell, etc., Mfg. Co. v. Phelps,* 130 U. S. 520; Jones on Evidence, § 369.

SMITH, J., delivered the opinion of the court below.

Appellants obtained from appellee a policy of marine insurance for $6,000 upon the steamer W. T. Scovell for a term of one year, commencing on the 29th day of August, 1906, at noon, and terminating on the 29th day of August, 1907, at noon. This policy provided that: "The perils which this company assume under this policy are the unavoidable dangers of rivers, of fires, and of jettisons, that shall cause loss or damage to said vessel or any part thereof, excepting . . . any loss or damage arising from or occasioned by the bursting of boilers, the collapsing of flues, or the derangement or breaking of engines or machinery, or from consequences of any character resulting from either of the foregoing exceptions, unless the same be caused by unavoidable external violence." During the time for which said policy was to be in force, and while the said boat was lying at the landing, her boilers exploded, wrecked the boat, and caused it to sink and become a total loss. Appellee having denied liability on the policy, this suit was instituted in the court below to recover on same. From a judgment in favor of appellee, this appeal is taken.

There was no evidence that the explosion was other than the ordinary explosion of a boiler, caused by the pressure of the steam within, except that the engineer of the boat, examining one of the sheets of the boiler which had been blown upon the

bank, discovered an inward indentation thereon. In order to prove that the explosion was caused by unavoidable external violence, this engineer, who qualified as an expert and was being examined as a witness for appellants, was asked by counsel for appellants this question: "The boiler in good condition, as you stated, and a sufficient quantity of water therein, and that fusible plug in good condition, taking this indentation in the bottom of the boiler into consideration, what, in your opinion, produced that trouble?" Which question was objected to by appellee, the objection sustained, and this ruling of the court is assigned for error. We are therefore called upon to pass upon the correctness of the action of the court below in thus refusing to allow the witness to testify as an expert to what violence, in his opinion, caused the explosion of the boiler.

The correct answer to this proposition is necessarily involved in the prior determination of the question whether the terms of the policy cover only violence external to the boat—the thing insured. It has been decided in the case of *Citizens' Insurance Company v. Glasgow*, 9 Mo. 411, that only violence external to the boat is covered by the terms of this policy, and we think that is the correct view. This being so, and the evidence in this case clearly showing that the explosion was not due to violence external to the boat, it becomes immaterial whether the witness had testified that in his opinion the explosion was due to violence external to the boat, since there were no facts in evidence on which he could have based such an opinion.

The action of the court below was therefore correct, and the judgment is *affirmed*.